**Joseph KIESEL and Terry Kiesel, Appellants**

v.

**RENTWAY, Maytag Corporation, and Crosley Corporation, Appellees.**

**No. 05–07–00333–CV.**

Court of Appeals of Texas, Dallas.

Jan. 28, 2008.

James Miller Beggs, Beggs Law Firm, Irving, TX, for Appellant.

Robert R. Varner, Jr., and Steven E. Aldous, Braden, Varner & Aldous, P.C., Dallas, Dana Ryan, Law Offices of Chad M. Neuens, Richardson, TX, for Appellee.

Before Justices WHITTINGTON, BRIDGES, and FRANCIS.

## OPINION

Opinion by Justice FRANCIS.

Joseph and Terry Kiesel appeal the trial court's order dismissing their claims against Rentway, Maytag Corporation, and Crosley Corporation. In ten issues, the Kiesels generally contend the trial court erred in granting appellees' no-evidence motions for summary judgment. In their eleventh issue, the Kiesels argue that if we reverse as to one defendant, we should reverse as to all. For reasons set out below, we reverse the trial court's summary judgment as to Maytag and Crosley. We affirm in all other respects.

In April 2002, the Kiesels leased a brand-new, full-size Crosley electric washer and clothes dryer from Rentway. Rentway installed both units, which were manufactured by Maytag. Nineteen months later, the Kiesels smelled smoke and, after investigating, found a fire in their garage where the washer and dryer had been installed. According to Mr. Kiesel, the controls of the dryer were "very hot and smoking" and the top of the dryer quickly "burst into flames." The Grand Prairie Fire Department responded to the fire, but the house and the Kiesels' personal property were destroyed.

The Kiesels sued appellees, asserting two theories for the cause of the fire: (1) Rentway improperly installed the dryer and (2) as to Maytag and Crosley, the dryer was defective. They alleged causes of action against Rentway for negligence and breach of express warranty for ser-

vices under the common law and breach of express warranty for goods under the Uniform Commercial Code. As to Maytag and Crosley, the Kiesels alleged claims for negligence, strict products liability, and breach of the implied warranty of merchantability.

Maytag and Crosley filed a joint no-evidence motion for summary judgment; Rentway separately filed its motion. Both motions argued a lack of causation. Additionally, Maytag and Crosley asserted there was no evidence of a defect in the dryer. The Kiesels responded to the motions with evidence, including the affidavit and fire investigation report of Lt. Stephen Kuykendall of the Grand Prairie Fire Department and a Fire Damage Evaluation prepared by Rimkus Consulting Group, Inc. (the Rimkus report). The trial court ultimately granted the motions for summary judgment and dismissed the Kiesels' claims. This appeal ensued.

■■■ A no-evidence motion for summary judgment is essentially a motion for pretrial directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). Once such a motion is filed, the burden shifts to the nonmoving party to present evidence raising an issue of material fact as to the elements specified in the motion. *Id.* at 583. A genuine issue of material fact exists if more than a scintilla of evidence establishing the existence of the challenged element is produced. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)). On the other hand, the evidence amounts to no more than a scintilla if it is "so weak as to do no more than create a mere surmise or suspicion" of

fact. *Id.* When determining if more than a scintilla of evidence has been produced, the evidence must be viewed in the light most favorable to the nonmovant. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

■■■ Negligence and breach of warranty require a showing of proximate cause, while producing cause is the test in strict liability. *Hyundai Motor Co. v. Rodriquez*, 995 S.W.2d 661, 667 (Tex.1999) (explaining required showing in strict liability and breach of warranty); *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex.1995) (explaining required showing in negligence and strict liability). Proximate cause consists of both cause in fact and foreseeability. *Union Pump Co.*, 898 S.W.2d at 775. Cause in fact means that the defendant's act or omission was a substantial factor in bringing about the injury which would not otherwise have occurred. *Id.* Producing cause is defined as one "that is a substantial factor that brings about injury and without which the injury would not have occurred." *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45 (Tex., 2007). Thus, common to both proximate and producing cause is causation in fact, including the requirement that the defendant's conduct or product be a substantial factor in bringing about the plaintiff's injuries. *Union Pump Co.*, 898 S.W.2d at 775. Proximate and producing cause differ in that foreseeability is an element of proximate cause, but not of producing cause. *Id.*

■■■ We begin with Maytag and Crosley's motion in which they asserted there was no evidence of causation and no evidence of a defect in the dryer.

In his affidavit, Lt. Kuykendall listed several findings made as part of the fire investigation. In relevant part, these findings were: (1) the area of origin of the fire

was the dryer; (2) the fire's heat source was "arcing;" (3) the type of material was plastic; (4) the cause of the ignition was "failure of equipment or heat source;" (5) the ignition factors were listed as "mechanical failure;" (6) the inside of the dryer was in good shape, and the fire did not appear to have started inside; (7) the lint trap did not appear to be a factor; (8) the dryer's console suffered heavy damage with the metal front mostly burnt away; (9) the back of the dryer's console was the most oxidized piece of metal in the garage; (10) the insulation around the wiring was burnt away but the power cord plug, still in the outlet, was in good shape and did not appear to have been a factor; and (11) Mr. Kiesel saw the dryer controls were "red hot and smoking" and saw the "top of the dryer flame up." Lt. Kuykendall stated that based on the fire scene examination, physical evidence, firefighter and witness statements, and knowledge of fire development, "our investigation determined that the fire originated on top of the dryer at or near the control panel."

As part of its investigation, Rimkus Consulting Group examined and photographed the fire scene and evidence, interviewed Mr. Kiesel, examined the clothes dryer, and interviewed local fire officials and obtained a copy of their related fire incident report. The Rimkus report stated that the timer motor of the dryer "exhibited heavy and severe heat patterns on the top side of the motor housing." In the center of the heat pattern was a "crack in the housing." The burning and extreme heating of the timer motor suggested it was the point of origin of the fire, and "[f]urther destructive testing would need to be performed to determine the exact failure sequence involved in the fire." The report concluded that

> based on our site examination, recovered evidence, and witness interviews, it is our opinion that the fire originated in

the control panel of the electric clothes dryer while the clothes dryer was turned on in the garage of the residence. Examination of the evidence involved indicates that the fire specifically originated at the timer motor assembly in the dryer control panel on the top right side of the dryer. The fire quickly spread from this point to involve the entire garage and office areas.

> The fire was determined to have been accidentally caused by an undetermined product failure.

In sum, the evidence showed the Kiesels lease-purchased a brand-new dryer in April 2002 Nineteen months later, the dryer caught fire. The specific point of origin was the timer motor assembly. The Rimkus report listed the cause of the fire as "undetermined product failure," while Lt. Kuykendall stated that the fire investigation report found the cause of the ignition was "failure of equipment or heat source" and listed the ignition factor as "mechanical failure." Given this evidence, we conclude reasonable fact-finders could differ in their conclusions as to whether the dryer's timing motor was defective and whether the defect caused the fire that led to the Kiesels' damages. *See Shaun T. Mian Corp. v. Hewlett–Packard Co.*, 237 S.W.3d 851, 868 (Tex.App.-Dallas, 2007, no pet. h.) (concluding in fire case that fact issue existed as to whether printer was defective at time left manufacturer and was cause of injury). Accordingly, we reverse the trial court's summary judgment in favor of Maytag and Crosley.

▬▬▬ We reach a different conclusion with respect to Rentway, however. Neither Lt. Kuykendall's affidavit and report nor the Rimkus report suggested the fire was caused by improper installation of the dryer by Rentway. To the contrary, the only evidence related to installation

provided that the power cord was "in good shape and did not appear to be a factor." Nevertheless, the Kiesels argue a fact issue was raised by Maytag and Crosley's supplemental response to a request for disclosure that listed Paul Reynolds of Maytag Corporation as a testifying expert. In particular, the Kiesels rely on the following portion of the disclosure: "Mr. Reynolds inspected the dryer at issue in this matter. He is expected to testify that he determined from his inspection that the power cord attached to the dryer had been incorrectly wired to the dryer. He is also expected to testify that there was no evidence of strain relief on the product."

■ An attorney's explanation of how he expects his expert to testify, offered in response to a discovery request, is not competent summary judgment proof any more than a lawyer's opening statement detailing to jurors what he expects the evidence to show is evidence at trial. Regardless, even if we consider the response, the attorney did not state that he expected Reynolds to testify that the incorrect wiring or lack of strain relief was the cause of the fire in this case. Having reviewed all of the evidence provided by the Kiesels in response to Rentway's motion, we conclude the Kiesels have not presented more than a scintilla of evidence that improper installation caused the fire. Accordingly, the trial court did not err in granting summary judgment to Rentway.

■ In reaching this conclusion, we reject the Kiesels' argument that we must reverse because Rentway's no-evidence motion was procedurally defective with respect to the negligence claim and that Rentway moved for summary judgment on a warranty claim not pleaded. Whether the Kiesels' claims are for negligence or breach of express or implied warranty, the element of causation must be proven. Rentway's first ground for summary judg-ment deals specifically with causation as to all of the Kiesels' claims, variously asserting that the Kiesels "cannot prove the specific cause of the fire," the Kiesels "have not produced any specific cause of the fire proximately caused by any acts or omissions of Defendant RENTWAY and therefore, this excludes [Rentway] as having any causal connection with the fire," "[n]o party to this case has identified an expert whose testimony is that [Rentway's] action or inaction was a specific cause of the fire," and the Kiesels cannot "prevail as a matter of law as to [Rentway] because [the Kiesels] can not [sic] show what conduct of [Rentway] caused the fire, and whether such conduct was [Rentway's] negligence."

Finally, the Kiesels argue this Court should reverse as to all appellees if it reverses as to one, arguing such a disposition is necessary "in order that the percentage of the responsibility of each [appellee] after they [sic] jury determines the weight and credibility to be given to each piece of evidence." Given that we have concluded the Kiesels have failed to produce more than a scintilla of evidence to hold Rentway responsible, we decline the request.

We reverse the trial court's order granting summary judgment in favor of Maytag and Crosley and remand the claims against those defendants for further proceedings. We affirm the order in all other respects.