02-11-204-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00204-CV

 

 


 
 
 Sheffield
 Development Company, Inc.
  
  
 v.
  
 Carter
 & Burgess, Inc.
 
 
 §
  
 §
  
 §
  
 §
  
 
 
 From the 153rd District
 Court
  
 of
 Tarrant County (153-252953-11)
  
 February
 1, 2013
  
 Opinion
 by Chief Justice Livingston
 
 


 

CORRECTED JUDGMENT

 

          After
reviewing Carter & Burgess, Inc.’s Unopposed Motion to Modify The Judgment,
we grant the motion.  We withdraw our December 21, 2012 judgment and substitute
the following.

          This
court has considered the record on appeal in this case and holds that there was
no error in the trial court’s judgment.  It is ordered that the judgment of the
trial court is affirmed.

It
is further ordered that appellant Sheffield Development Company, Inc. shall pay
all of the costs of this appeal and that judgment is rendered against Oklahoma
Surety Company, the surety on appellant Sheffield Development Company, Inc.’s
supersedeas bond, for the performance of the judgment against appellant and for
any costs taxed against appellant, for which let execution issue.

 

SECOND DISTRICT COURT OF APPEALS 

 

 

 

By_________________________________

   
Chief Justice Terrie Livingston

 

 

 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00204-CV

 

 


 
 
 Sheffield Development Company, Inc.
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 Carter & Burgess, Inc.
 
 
  
 
 
 APPELLEE 
 
 


 

----------

 

FROM THE 153rd
District Court OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          This
is an appeal from the trial court’s final judgment for Carter & Burgess,
Inc. (C&B), which incorporates two partial summary judgments the trial
court had granted in C&B’s favor on all claims brought against it by Sheffield
Development Company, Inc. (SDC).  We affirm.

Background

          Morrison
Homes, a home builder, sued SDC, the developer of a residential subdivision in
Tarrant County, and others on April 27, 2007, bringing claims against
SDC for breach of contract; breach of warranty; negligence; negligent
misrepresentation; negligent hiring or entrustment, or both; and statutory
fraud in a real estate transaction.  Specifically, Morrison Homes sought to
hold SDC liable for postconstruction damages to the homes it built on the lots
that SDC sold it, contending that SDC did not deliver the lots to Morrison with
the proper grading and drainage, thus causing postconstruction soil movement
and damage.  On November 23, 2009, SDC filed an original third-party
petition against C&B and other subcontractors involved in the development
of the subdivision;[2] C&B had provided
engineering and surveying services pertaining to the grading of the lots in the
subdivision.  In its petition against C&B, SDC alleged that C&B was
liable for contribution under chapter 33 of the civil practice and
remedies code to the extent Morrison recovered against SDC and for negligence,
negligent misrepresentation, breach of contract, breach of warranty, and breach
of fiduciary duty and duty of good faith and fair dealing.

C&B moved to dismiss the suit on December 18, 2009
under section 150.002(a) of the civil practice and remedies code, claiming that
the certificate of merit provided by SDC’s engineer, Robert Adams, was
inadequate because he is an engineer rather than a surveyor.  Tex. Civ. Prac.
& Rem. Code Ann. § 150.002(a) (West 2011).  The trial court
denied the motion to dismiss on January 12, 2010.

          C&B
filed a combined traditional and no-evidence motion for summary judgment on
June 1, 2010 on SDC’s contribution claim.  The same day, it filed a
combined traditional and no-evidence motion for summary judgment on SDC’s
breach of contract, breach of warranty, negligence, negligent misrepresentation,
and breach of fiduciary duty and good faith and fair dealing claims.  The trial
court eventually granted both motions in October 2010 by letter ruling. 
The trial court signed a final take-nothing judgment on October 25, 2010.[3]

Discovery-Related
Issues

          In
its seventh and eighth issues, SDC complains that the trial court erred by granting
either a traditional or no-evidence summary judgment on all of its claims before
an adequate time for discovery had passed.  In its ninth issue, SDC challenges
the trial court’s order granting C&B’s motion to compel, which SDC claims prevented
it from conducting any further material discovery, including scheduled
depositions of C&B witnesses.

Motion
to Compel

Applicable Facts

The trial court denied C&B’s motion to
dismiss in January 2010, two months after SDC sued C&B the second time. 
SDC filed a designation of expert witnesses on January 22, 2010.  It
also filed a motion to extend the deadline to designate experts the same day. 
In its motion, SDC asked for an extension of the designation deadlines because
it had not been able to depose any of the third-party defendant witnesses.  The
trial court then signed an order extending the deadline for another three
months, to April 16, 2010.[4]

          C&B
filed its first motion to compel on February 23, 2010. In its motion,
C&B claimed that SDC had not fully answered the following interrogatory
number 5:

Please
identify/specify each and every lot in the Development which you contend
deviated from or failed to conform to the approved grading and drainage plans. 
For each such lot, please identify and specify:

 

(a) the specific nature of the alleged
deviation or non-conformity;

(b) the date(s) on which the alleged
deviation or non-conformity existed;

(c) the person(s) and/or event(s) which
you contend caused or contributed to the alleged deviation or non-conformity;

(d) the date the alleged deviation or
non-conformity was discovered and by whom; and

(e) any and all steps taken to correct or
remedy the alleged deviation or non-conformity.

SDC
had objected to the interrogatory, claiming that it was premature, that SDC
would not be able to answer the interrogatory until it had completed its
discovery, and that the question improperly required SDC to marshal its proof. 
SDC then identified “generally” thirty-six lots in the subdivision that “may
have deviated from or failed to conform to the approved grading and
drainage plans.”  [Emphasis added.]  SDC further stated that it did

not know with
specificity the date(s) on which the alleged deviation or non-conformity
existed. SDC contends each party to this lawsuit may have caused or contributed
to the alleged deviation or non-conformity.  SDC does not know with specificity
the date the alleged deviation or non-conformity was discovered and by whom. 
SDC is unaware if any parties have taken any steps to correct or remedy any
alleged deviation or non-conformity.

 

          The
day after it filed its motion to compel, C&B filed a motion to quash the depositions
of Gary Sheffield and C&B’s engineer Ed Oram because SDC had not fully
answered interrogatory 5.  According to C&B, it had “engaged in an
incredibly aggressive effort to obtain and review documents (over 30,000 pages)
to prepare for depositions,” and SDC had planned “a massive ‘document dump’”
the night before the scheduled depositions the first week in March 2010.  C&B
contended that it had propounded discovery on SDC in January 2010 after it
filed its answer and that it could not adequately prepare for the depositions
until it had received an adequate answer to interrogatory 5.

On March 9, 2010,
the trial court signed an order requiring SDC to more fully respond to the
interrogatory on or before March 16, 2010.  The order also states
that per the parties’ agreement, the Oram and Sheffield depositions would take
place on March 25 and 26, 2010.

          Also
in early March 2010, SDC obtained a trial court order for access to twenty-one
of the lots for testing and engineering purposes; all access was to be granted
no later than April 22, 2010.

          On
April 8, 2010, SDC filed an opposed motion for continuance, asking for
more time to conduct discovery[5] because it was still
having trouble obtaining access to all of the lots to perform required
inspections and tests.  The motion did not mention the Sheffield and Oram
depositions.  C&B responded, contending that the motion was not properly
verified and that granting it would assist SDC in what it characterized as a fishing
expedition.  The trial court denied the motion for continuance but extended the
expert designation deadlines for another forty-five days, until June 1, 2010.

On April 9, 2010,
C&B filed its second motion to compel, in which it alleged that SDC’s April 8, 2010
response to interrogatory 5 was still incomplete.  That response stated,

Subject to and
without waiving any objections, if Plaintiff’s assertion that the land was not
developed pursuant to the design documents and the land was not delivered in a
condition suitable for construction of residences is true, then C&B failed
to meet the applicable standard(s) of care.  Generally, the following lots may
have deviated from or failed to conform to the approved grading and drainage
plans:

 

[list of thirty-six
lots]

 

SDC’s experts are
investigating these lots to determine which lots may deviate from or fail to
conform to the approved grading and drainage plans and, if so, how they deviate
from or fail to conform to the approved grading and drainage plans.

 

Specifically, SDC was
present for a site visit at 9621 Courtright on March 17, 2006. . . . 
SDC observed a walkway around the perimeter of the north and east sides of the
home that trapped water next to the house and gutters which discharged the roof
water between the walkway and the slab.  The neighbor above and behind 9621
Courtright also installed a pool.  SDC observed saturated soil located off the
southwest corner of the house.  At this site visit, SDC did not observe any
conditions it believed to be an obvious deviation from the grading or drainage
plans.  SDC contends it does not have the expertise to make a determination if
the issues observed were the result of the failure to conform to the approved
grading and drainage plans.

 

A second meeting was
held on Oct. 17, 2006 but the lots were not visited.  Morrison did
not request any further action from SDC.

 

For the rest of the
lots, SDC does not know with specificity the specific nature of the alleged
deviation or non-conformity or the dates on which the alleged deviation or
non-conformity existed.  SDC did not participate in any site visits on these
lots to investigate any issues after the initial remedial work performed by
Rodman in late 2001 and the re-certification from C&B on January 18, 2002.

 

SDC contends Rodman
and C&B may have caused or contributed to the alleged deviation or
non-conformity on all of the lots listed above. . . .

 

SDC has not taken any
action to correct or remedy any alleged deviation or non-conformity since the initial
remedial work performed by Rodman in late 2001 and the re-certification from
C&B on January 18, 2002.  SDC is aware that Morrison is alleging
damages related to all of the lots and may have performed remedial work on the
lots.  However, SDC does not know with specificity which steps were taken to
correct or remedy any alleged deviation or non-conformity with the grading or
drainage plans.  [Emphasis added.]

 

C&B
cited Gary Sheffield’s March 25, 2010 deposition testimony in which
he stated that he did not know of any specific defects in the lots and that he
did not even know if there were any defects at all.  C&B objected to SDC’s
answer that it was still investigating to determine which lots may have deviated
from or failed to conform to the approved grading plans.  C&B again accused
SDC of engaging in a fishing expedition and asked for $4,000 in attorney’s fees
to cover the expense of drafting and pursuing the motion to compel.

While
the second motion to compel was pending, C&B filed a motion to quash
depositions scheduled in May and June 2010, objecting to the dates and
times because of SDC’s answer to interrogatory 5.

In a
May 26, 2010 letter ruling granting C&B’s second motion to compel, the
trial court found as follows:

1.           
The
amended answer of [SDC] . . . is vague, evasive and
incomplete.

 

2.           
The
amended answer wholly fails to provide sufficient information for [C&B] to
determine a) the factual basis of the allegations of [SDC] against it, b) whether
expert testimony is necessary to confront such allegations, and c) if
expert testimony is necessary, the nature and identity of appropriate experts.

 

3.           
It
is unfair and prejudicial in light of such a vague, evasive and incomplete
answer to require [C&B] to participate in discovery as to [SDC]. . . .

 

The
trial court then ordered SDC to amend its answer by June 10, 2010, barred
SDC from offering evidence of defects or errors by C&B pertaining to
grading or drainage on any lot other than 9621 Courtright until it more
fully answered the interrogatory, ordered that C&B did not need to produce
any witnesses for deposition or respond to any discovery requests regarding SDC’s
claims until the question was answered, and ordered SDC to pay C&B’s
attorney’s fees of $2,000.  The trial court subsequently incorporated its
findings into an order on June 7, 2010.

C&B
filed its first motions for summary judgment on June 1, 2010.

          SDC
filed a designation of experts on June 2, 2010.  It also filed a
verified motion for continuance on June 8, 2010 requesting that the
summary judgment motions be continued for discovery to be completed by July 25, 2010
in accordance with the then-current scheduling order; trial was set for
September 2010.  SDC alleged that it had not been able to take any of the
additional depositions of C&B witnesses that had been quashed.  SDC alleged
that the discovery was material in that it related to its claims against
C&B:  SDC had deposed Oram but could not get specific information on the
engineering and surveying services performed by C&B because Oram is not a
licensed engineer or surveyor.  SDC wanted to take the deposition of Don Allen,
the engineer of record for the project, and also of Rick Hickman, the C&B
representative “who certified the pad elevations to” SDC.  C&B had used Hickman’s
affidavit to support its previously filed motion to dismiss.  SDC further alleged
that C&B had not responded to three requests for deposition dates that it
had sent in April 2010.

On
June 10, 2010, the trial court quashed the Allen and Hickman depositions
but allowed other depositions to go forward on the agreement of the parties.

          C&B
filed first amended motions for summary judgment on June 29, 2010.  SDC
again tried to set depositions for Allen and Hickman in July 2010; C&B
again filed a motion to quash, alleging that the trial court had urged the
parties to conserve resources that month and to spend their efforts on
mediation and settlement conferences, and that the dates were not agreed.  Two
days later, C&B also moved to strike SDC’s experts.  Around the same time,
SDC filed another verified motion for continuance, in which it alleged that it
still did not have the needed depositions.  In its motion, SDC stated that it
appeared the depositions could go forward on July 14 and 15, 2010.

          On
July 13, 2010, the parties entered into a rule 11 agreement, in
which C&B agreed to reschedule summary judgment hearings to the next
available date on the court’s calendar, but no sooner than August 11, 2010. 
C&B filed second amended motions for summary judgment on all of SDC’s
claims on July 28, 2010.

On
July 29, 2010, SDC filed a motion to extend discovery deadlines until
August 27, 2010.  SDC stated in its motion that it had agreed to
delay the Allen and Hickman depositions until after mediation, that it had rescheduled
them after mediation, but that they were quashed by another defendant because
they had been set after the discovery deadline.  The record does not contain a
ruling on this motion, and the depositions never occurred.

On
August 13, 2010, the trial court heard C&B’s summary judgment
motions. That same day, on Morrison’s motion, the trial court also stayed all
discovery in the suit until the disposition of a pending interlocutory appeal.[6]
 The trial court signed its final judgment in C&B’s favor on October 25, 2010.

          Issue

          SDC
contends that the trial court abused its discretion by granting C&B’s
second motion to compel, preventing SDC from taking the Allen and Hickman
depositions and thus forcing it to defend C&B’s summary judgment motions without
adequate, material discovery.  SDC also contends that the trial court
compounded this error by denying its April 2010 motion to extend the July 25, 2010
discovery deadline and by staying all proceedings in the case except the
proceedings on C&B’s motions for summary judgment.

Standard
of Review

Trial
courts have broad discretion to impose discovery sanctions to secure compliance
with discovery rules, to deter other litigants from similar misconduct, and to
punish violators.  In re Estate of Preston, 346 S.W.3d 137, 156 (Tex.
App.––Fort Worth 2011, no pet.); see Chrysler Corp. v. Blackmon, 841
S.W.2d 844, 849 (Tex. 1992).  We therefore review a trial court’s imposition of
discovery sanctions for an abuse of discretion.  Cire v. Cummings, 134
S.W.3d 835, 838 (Tex. 2004); Estate of Preston, 346 S.W.3d at 156.  In
reviewing sanctions orders, we are not bound by a trial court’s findings of
fact and conclusions of law; rather, we must independently review the entire
record to determine whether the trial court abused its discretion.  Am.
Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006); Estate
of Preston, 346 S.W.3d at 156.

Texas
rule of civil procedure 215.2(b) allows a trial court to sanction a party
for failure to comply with a discovery order or request.  Tex. R. Civ. P. 215.2(b). 
Sanctions that a trial court may impose include an order refusing to allow the
disobedient party to support or oppose designated claims or defenses and an
order striking out pleadings or rendering a judgment by default against the
disobedient party.  Tex. R. Civ. P. 215.2(b)(4), (5).

In
discovery-sanction cases, a trial court’s discretion is limited by the
requirement of rule of civil procedure 215.2(b) that the sanctions be “just”
and by the parties’ constitutional right to due process.  TransAm. Natural
Gas Corp. v. Powell, 811 S.W.2d 913, 917–19 (Tex. 1991) (orig. proceeding);
Estate of Preston, 346 S.W.3d at 156.  A sanction is just if a direct
relationship exists between the offensive conduct and the sanctions imposed.  TransAm.
Natural Gas Corp., 811 S.W.2d at 917; Estate of Preston, 346 S.W.3d
at 156.  A direct nexus exists when the sanction is directed against the true
offender and is tailored to remedy any prejudice the discovery abuse caused.  TransAm.
Natural Gas Corp., 811 S.W.2d at 917; Estate of Preston, 346 S.W.3d
at 157.  To be just, a sanction must also not be excessive.  TransAm.
Natural Gas Corp., 811 S.W.2d at 917; Estate of Preston, 346 S.W.3d
at 157.  A sanction imposed for discovery abuse should be no more severe than
necessary to satisfy its legitimate purposes.  Cire, 134 S.W.3d at 839; Estate
of Preston, 346 S.W.3d at 157.

Analysis

SDC
claims that by granting C&B’s second motion to compel and requiring it to
more fully answer interrogatory 5, the trial court improperly required it to
marshal all of its proof contrary to rule 197.1, required SDC to respond
with information that was not reasonably available, and required SDC to respond
with expert testimony when the question asked for none.  Additionally, SDC claims
that by preventing it from obtaining critical discovery, the trial court’s
order effectively granted death penalty sanctions without first exploring
lesser options.

Contention
discovery is permitted by the rules of civil procedure.  Tex. R. Civ. P. 192.3(j)
(“A party may obtain discovery of any other party’s legal contentions and the
factual bases for those contentions.”).  But all that is required is a basic
statement of those contentions and not a marshaling of evidence.  Tex. R. Civ.
P. 192 cmt. 5; In re Gen. Motors Corp., No. 12-07-00387-CV, 2008 WL
541679, at *3 (Tex. App.––Tyler Feb. 29, 2008, orig. proceeding)
(mem. op.).  Marshaling means “[a]rranging all of a party’s evidence in the
order that it will be presented at trial.”  Black’s Law Dictionary 1063 (9th
ed. 2009).  Interrogatory 5 did not therefore require SDC to “marshal” its
proof.  Instead, it sought the facts underlying SDC’s claims against C&B,
which “is the very purpose of discovery.”  In re SWEPI L.P., 103 S.W.3d
578, 590 (Tex. App.––San Antonio 2003, orig. proceeding).  Moreover, even if
the factual basis of a party’s claims is supplied by an expert or experts, the
party “must still reveal the factual basis of the claims . . . ,
regardless of how those facts may ultimately be proved at trial.”  Id.
(citing Able Supply Co. v. Moye, 898 S.W.2d 766, 771 (Tex. 1995) (orig.
proceeding)).

In
his affidavit supporting SDC’s certificate of merit underlying the suit, SDC’s
expert Adams stated that, based on his review of C&B’s 2001 and 2002 certifications
of the lot grading and his visual inspection of at least some of the lots, he
had determined that it was apparent that the lots and retaining walls were not
constructed in accordance with the approved subdivision grading plans.  SDC’s
contention that it could not determine the facts supporting its claims against
C&B until it obtained further discovery compels one of two conclusions: 
either SDC’s expert had provided it with the facts necessary to state a claim
and SDC did not include those facts in its response to interrogatory 5, or
SDC was seeking discovery from C&B to obtain the facts it needed to support
its claim.  SDC’s failure to fully answer interrogatory 5, along with its
insistence that it could not do so until it had taken depositions from
C&B’s witnesses, tends to support a conclusion that SDC needed more
discovery to obtain any evidence to defeat a summary judgment motion.  See
Tex. R. Civ. P. 166a(g); Tenneco Inc. v. Enter. Prods. Co., 925
S.W.2d 640, 647 (Tex. 1996) (orig. proceeding); Jaimes v. Fiesta Mart, Inc.,
21 S.W.3d 301, 304 (Tex. App.––Houston [1st Dist.] 1999, pet. denied).  But courts
may presume that a plaintiff has sufficiently investigated his own case prior
to filing it.  Wright v. Sydow, 173 S.W.3d 534, 550 (Tex. App.––Houston
[14th Dist.] 2004, pet. denied); Laughlin v. Bergman, 962 S.W.2d 64, 66
(Tex. App.––Houston [1st Dist.] 1997, pet. denied).  Thus, we conclude and hold
that the trial court did not abuse its discretion by granting C&B’s motion
to compel.[7]  See, e.g., Able
Supply Co., 898 S.W.2d at 771 (holding that trial court abused its
discretion by denying defendants’ motion to compel which sought facts
underlying causation element of multiple plaintiffs’ claims in complex toxic
tort litigation).  Moreover, for the same reason, we conclude and hold that the
trial court did not abuse its discretion by refusing to extend the discovery
deadline and by staying further discovery while it considered the summary
judgment motions.

We
overrule SDC’s ninth issue.

Adequate
Time for Discovery

We review a trial court’s determination that
there has been an adequate time for discovery on a case-by-case basis under an
abuse of discretion standard.  LaRue v. Chief Oil & Gas, L.L.C., 167
S.W.3d 866, 873 (Tex. App.––Fort Worth 2005, no pet.); see Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241–42 (Tex. 1985), cert.
denied, 476 U.S. 1159 (1986).[8] 
In considering whether the trial court permitted an adequate time for
discovery, we consider the following factors:  (1) the nature of the case,
(2) the nature of the evidence necessary to controvert the no-evidence
motion, (3) the length of time the case was active, (4) the amount of
time the no-evidence motion was on file, (5) whether the movant had
requested stricter deadlines for discovery, (6) the amount of discovery
that already had taken place, and (7) whether the discovery deadlines in
place were specific or vague.  Brewer & Pritchard, P.C. v. Johnson,
167 S.W.3d 460, 467 (Tex. App.––Houston [14th Dist.] 2005, pet. denied).

          The
evidence shows that the suit against SDC had been pending for about two and one
half years before SDC filed its third-party petition against C&B; SDC’s
claims against C&B had been pending for a little over six months when
C&B filed its first motions for summary judgment.  C&B had propounded
discovery and was attempting to obtain answers to interrogatory 5 that
would allow it to prepare a defense to SDC’s claims.  Although SDC explained to
the trial court that it was having difficulty obtaining access to the
individual lots for inspection and testing purposes, it never explained why it
had taken three years to do so or why its expert’s prior visual inspection,
which he had stated was sufficient to determine that the lots and retaining
walls were not constructed according to the approved grading plans and to
determine that C&B was at fault, could not provide the facts necessary to
answer interrogatory 5.  The trial court had issued its sixth scheduling
order by the time summary judgment was granted and had acquiesced in several
extensions of designation deadlines and agreed dates between the parties.  Accordingly,
we conclude and hold that the trial court did not abuse its discretion by
determining that an adequate time for discovery had elapsed before granting
C&B’s summary judgment motions.  See, e.g., In re Guardianship of
Patlan, 350 S.W.3d 189, 196–97 (Tex. App.––San Antonio 2011, no pet.);
Montoya v. Bluebonnet Fin. Assets, No. 02-09-00301-CV, 2010 WL 4261481, at
*4 (Tex. App.––Fort Worth Oct. 28, 2010, no pet.) (mem. op.).  We
overrule SDC’s seventh and eighth issues.

Merits of Summary Judgment Motions

          In
its first four issues, SDC challenges the trial court’s summary judgment on all
of its claims against C&B, on either traditional or no-evidence grounds.

Standards
of Review

When reviewing a no-evidence summary
judgment, we examine the entire record in the light most favorable to the
nonmovant, indulging every reasonable inference and resolving any doubts
against the motion.  Sudan v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006). 
We review a no-evidence summary judgment for evidence that would enable
reasonable and fair-minded jurors to differ in their conclusions.  Hamilton
v. Wilson, 249 S.W.3d 425, 426 (Tex. 2008) (citing City of Keller v.
Wilson, 168 S.W.3d 802, 822 (Tex. 2005)).  We credit evidence favorable to
the nonmovant if reasonable jurors could, and we disregard evidence contrary to
the nonmovant unless reasonable jurors could not.  Timpte Indus., Inc. v.
Gish, 286 S.W.3d 306, 310 (Tex. 2009) (quoting Mack Trucks, Inc. v.
Tamez, 206 S.W.3d 572, 582 (Tex. 2006)).  If the nonmovant brings forward
more than a scintilla of probative evidence that raises a genuine issue of
material fact, then a no-evidence summary judgment is not proper.  Smith v.
O’Donnell, 288 S.W.3d 417, 424 (Tex. 2009); King Ranch, Inc. v.
Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541 U.S.
1030 (2004).

We review a traditional summary judgment
de novo.  Travelers Ins. Co. v. Joachim, 315 S.W.3d 860, 862 (Tex.
2010).  We consider the evidence presented in the light most favorable to the
nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors
could, and disregarding evidence contrary to the nonmovant unless reasonable
jurors could not.  Mann Frankfort Stein & Lipp Advisors, Inc. v.
Fielding, 289 S.W.3d 844, 848 (Tex. 2009).  We indulge every reasonable
inference and resolve any doubts in the nonmovant’s favor.  20801, Inc. v.
Parker, 249 S.W.3d 392, 399 (Tex. 2008).  A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  Frost Nat’l Bank v. Fernandez, 315
S.W.3d 494, 508 (Tex. 2010); see Tex. R. Civ. P. 166a(b), (c).

Breach
of Fiduciary Duty/Good Faith and Fair Dealing

          C&B
claimed in its no-evidence motion for summary judgment, among other things,
that SDC could produce no evidence of a special relationship.

Fiduciary
duties may arise from formal and informal relationships. Crim Truck &
Tractor Co. v. Navistar Int’l Transp. Corp., 823 S.W.2d 591, 593–94 (Tex. 1992)
(op. on reh’g), superseded by statute on other grounds as stated in Subaru
of Am., Inc. v. David McDavid Nissan, Inc., 84 S.W.3d 212, 225–26 (Tex. 2002)
(op. on reh’g).  Whether a fiduciary duty exists between parties depends on the
circumstances.  Lindley v. McKnight, 349 S.W.3d 113, 124 (Tex.
App.––Fort Worth 2011, no pet.); Cotten v. Weatherford Bancshares, Inc.,
187 S.W.3d 687, 698 (Tex. App.––Fort Worth 2006, pet. denied).  A person is
justified in placing confidence in the belief that another party will act in
his best interest only when he is accustomed to being guided by the judgment or
advice of the other party and there exists a long association in a business
relationship as well as personal friendship.  Lindley, 349 S.W.3d at
125.  Therefore, to “impose such a relationship in a business transaction,
there must be a fiduciary relationship before, and apart from, the agreement
made the basis of the suit.”  Ins. Co. of N. Am. v. Morris, 981 S.W.2d
667, 675 (Tex. 1998); see Crim Truck, 823 S.W.2d at 594 (“The fact that
one businessman trusts another, and relies upon his promise to perform a
contract, does not rise to a confidential relationship.”).  Furthermore, “mere
subjective trust does not, as a matter of law, transform arm’s-length dealing
into a fiduciary relationship.”  Schlumberger Tech. Corp. v. Swanson,
959 S.W.2d 171, 177 (Tex. 1997).

The
Texas Supreme Court has specifically rejected the notion that a general duty of
good faith and fair dealing is implied in all contracts. City of Midland v.
O’Bryant, 18 S.W.3d 209, 215 (Tex. 2000) (op. on reh’g).  Such a duty may
be implied, however, when there is a “special relationship” between the
contracting parties, such as insurer-insured.  Arnold v. Nat’l County Mut.
Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987).  A “special relationship”
is one in which “there is unequal bargaining power between the parties and a
risk exists that one of the parties may take advantage of the other based upon
the imbalance of power.”  Laredo Med. Group v. Lightner, 153 S.W.3d 70,
72–73 (Tex. App.––San Antonio 2004, pet. denied) (op. on reh’g).

SDC
does not contend that there was a formal fiduciary relationship between the
parties.  We have found no cases recognizing a fiduciary duty as a matter of
law of engineers to their clients.  Therefore, here, to create a fact issue about
the existence of an informal fiduciary duty, SDC needed to offer evidence of a
moral, social, domestic, or purely personal relationship of trust and confidence
that existed before the 2001 contract between SDC and C&B.  See Morris,
981 S.W.2d at 675; Crim Truck, 823 S.W.2d at 594.

SDC
points to Gary Sheffield’s affidavit, in which he states that SDC had worked
with C&B for twenty-nine years, that SDC did not directly hire engineers
and relied on C&B for all of its engineering and survey services, that SDC
relied on C&B to certify that work because SDC did not have the skill,
training, or experience to perform that work itself, and that SDC relied on C&B’s
certification of the work of others with “utmost faith and confidence and
trust.”  Sheffield’s affidavit, however, does nothing more than show a history
of a business relationship with C&B involving subjective trust that C&B
would perform its expected duties.  See, e.g., Meyer v. Cathey,
167 S.W.3d 327, 331 (Tex. 2005); Crim Truck, 823 S.W.2d at 595.  Nor
does it show such an unequal balance of bargaining power that a risk existed
that C&B would take advantage of SDC.  See Affiliated Capital Corp. v. Sw.,
Inc., 862 S.W.2d 30, 34 (Tex. App.––Houston [1st Dist.] 1993, writ
denied).  Thus, we conclude and hold that the trial court did not err by
determining that there is no evidence of the type of relationship necessary to
raise a fact issue on SDC’s breach of fiduciary duty claim.

Negligence
and Contribution

C&B
alleged that SDC could not come forward with more than a scintilla of evidence
that any of its alleged acts or omissions caused SDC’s damages under a
negligence theory or Morrison’s damages under a contribution theory.[9] 
SDC points to the following evidence as raising a fact issue as to causation.

SDC
provided an affidavit from its engineering expert, Robert Adams, in which Adams
opines that, based on his visual observations of the subdivision in 2009, his
review of the record drawings of the lot grading plan prepared by C&B, and
his review of 2010 measurements of the elevations at many of the subdivision
lots, it was his opinion that

the omissions by
[C&B] were a contributing factor to the grading and drainage
deviations from the approved plans, resulting in water accumulation along the
surface and within the subsurface contributing to the movement of the soil,
which could be the cause of foundation failures.  It should have been
foreseeable by [C&B], that were the grading and drainage plan not followed
by the contractor(s) and/or home builder(s), the potential for standing water
within the lot and possible flooding of an adjacent structure was a
possibility.  [C&B] had a responsibility to [SDC] to find any deviations
from the approved grading and drainage plan, caused by the contractor(s) and/or
home builder(s), and to report said deviations.  Had said deviations been
reported [to] their client by [C&B], then [SDC] could have requested
corrective measures be taken by the home builder(s) and thereby potentially
preventing some of the problems incurred as described by the home owners,
engineering experts and foundation experts.

 

Based upon my review
of the field measurements performed by JPH Surveying, it is evident that not
all rear lot corner elevations are within the allowable tolerance.  It is
unlikely that these walls have been revised, rebuilt or altered in regard to
the final top and bottom wall elevations, since final acceptance of the lots by
the home builder.  Therefore, [C&B] misrepresented to their client and the
home builder(s) that all lots were in general conformance with the approved
grading and drainage plan.

 

[Emphasis
added.]  Thus, Adams does not point to any deficiencies in the approved plan,
but rather he opines that C&B wrongly certified that the lots were in
conformance with the approved plan.

SDC
says that this affidavit—along with reports from an engineer that, according to
SDC, “causally link soil movement to Morrison’s alleged damages” on four of the
lots—provides sufficient evidence of causation.  The 2008 engineering reports
from Blake Wilson relied on observation of and tests on four of the lots
between 2006 and 2008.  All of the reports state, “In this case, the home may
have been affected by a moderate amount of post-construction foundation
movement.  The foundation movement that affected this home can be attributed to
moisture-related shrinkage and swelling of the sub-grade soil.”  [Emphasis
added.]  All of the reports note that “[p]ost-construction foundation movement
is not uncommon for recently completed homes built upon what was initially
relatively dry soil.”  In addition, all of the reports limit the applicability
of the conclusion to “the conditions observed at the time of the
investigation.”

The
elements of causation are cause in fact and foreseeability.  W. Invs.,
Inc. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005).  Cause in fact is
established when the act or omission was a substantial factor in bringing about
the injuries, and without it, the harm would not have occurred.  IHS Cedars
Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 799 (Tex. 2004).

Although
Adams opines that C&B’s omissions were a contributing factor to Morrison’s
damages, he does not state that but for those acts or omissions, the damages
would not have occurred.  Thus, his affidavit does not provide sufficient
evidence of causation under the applicable standard.  See Childs v.
Crutchfield, No. 09-07-00065-CV, 2007 WL 5075982, at *6 (Tex. App.––Beaumont
Apr. 10, 2008, pet. denied) (mem. op.); see also Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 472 (Tex. 1991) (holding that it is not
enough that harm would not have occurred had actor not been negligent and that
actor’s negligence must also be a substantial factor in bringing about the
plaintiff’s harm).

          Additionally,
Adams’s opinion that C&B must have misrepresented the elevations at the
rear lot corners because it is unlikely that the retaining walls had been
altered since C&B was to certify them is conclusory.  Conclusory testimony
constitutes no evidence and is insufficient to raise a fact question to defeat
a no-evidence motion for summary judgment.  Wal-Mart Stores, Inc. v. Merrell,
313 S.W.3d 837, 839 (Tex. 2010); IHS Cedars Treatment Ctr., 143 S.W.3d at
803; Chesser v. LifeCare Mgmt. Servs., L.L.C., 356 S.W.3d 613, 623 (Tex.
App.––Fort Worth 2011, pet. denied).  An expert must explain the basis of his
statements to link his conclusions to the facts.  City of San Antonio v.
Pollock, 284 S.W.3d 809, 818 (Tex. 2009).  Thus, an expert’s opinions must
be supported by facts in evidence, not merely conjecture.  Marathon Corp. v.
Pitzner, 106 S.W.3d 724, 729 (Tex. 2003).  An expert’s opinions cannot rest
on the expert’s subjective interpretation of the facts.  See TXI Transp. Co.
v. Hughes, 306 S.W.3d 230, 239 (Tex. 2010).

          Adams
concludes that because the rear property lot elevations were not in conformance
with the lot grading and drainage plans in 2009, C&B must have failed to
properly certify their conformance in late 2001 and early 2002.  SDC contends
that Adams’s conclusion is supported by the Wilson reports.  However, the
Wilson reports are limited by their terms to the time period between 2006 and
2008, and they specifically attribute the damage to the homes to
postconstruction movement due to swelling and shrinkage of the subgrade soils,
which the reports state is common for the area.  Thus, the Wilson reports do
not support Adams’s bare conclusion that the lots were not in conformance with
the approved plans in 2001 and 2002.  Additionally, even if Adams’s conclusion
that the lots were initially nonconforming were true, he has still only
concluded that such a condition only possibly contributed to the damage to the
homes.  This is not the proper standard for causation.  See Lear Siegler,
Inc., 819 S.W.2d at 472.  Thus, we conclude and hold that the trial court
did not err by granting a no-evidence summary judgment on C&B’s negligence
and contribution claims.

Breach
of Contract and Breach of Warranty

          C&B
moved for a traditional and no-evidence summary judgment on SDC’s breach of
contract and breach of warranty claims, contending that SDC could produce no
evidence of damages or injury as a result of any breach.

          According
to SDC, its contract claim “is based on C&B’s breach of its commitment to
provide that an ‘Engineer will certify lot grades at rear lot property
corners.’”  SDC also claimed that C&B breached its express contractual
warranty to “be responsible, to the level of competency presently maintained by
other practicing professional engineers in the same type of work in [SDC’s]
community, for the professional and technical soundness, accuracy, and adequacy
of all design, drawings, specifications, and other work and materials
furnished.”  SDC contends that it at least raised a fact issue that C&B’s
breach of these contractual provisions caused it damages as evidence of its
attorney’s fees spent in the Morrison litigation and lost time and profits
incurred by SDC in participating in the defense of the Morrison suit.

          SDC
contends that although C&B specifically challenged the breach, causation,
and damages elements of its breach of contract claim, it failed to challenge
any specific elements of its breach of warranty claim; therefore, the trial court
could not have properly granted a no-evidence summary judgment on its breach of
warranty claim.  See Tex. R. Civ. P. 166a(i); Timpte Indus.,
286 S.W.3d at 310.  However, C&B stated in the summary of the argument
section of its motion that “[t]here is no evidence of causation or harm on all
of [SDC’s] claims.”  [Emphasis added.]  Causation and harm are elements of
both a breach of contract and breach of warranty claim.  Pagosa Oil &
Gas, L.L.C. v. Marrs & Smith P’ship, 323 S.W.3d 203, 215 (Tex. App.––El
Paso 2010, pet. denied); Kiesel v. Rentway, 245 S.W.3d 96, 101 (Tex.
App.––Dallas 2008, pet. dism’d).  Thus, we conclude and hold that C&B’s
no-evidence motion was sufficient under rule 166a(i) as to SDC’s breach of
warranty claim.  See Preston Nat’l Bank v. Stuttgart Auto Ctr. Inc., No.
05-09-00020-CV, 2010 WL 3310727, at *2–3 (Tex. App.––Dallas Aug. 24, 2010,
no pet.) (mem. op.).  We therefore overrule SDC’s second issue.[10]

          SDC’s
breach of contract and breach of warranty claims fail for the same reason stated
above as to their negligence and contribution claims:  SDC did not bring
forward any credible summary judgment evidence showing that even if C&B
breached the contract by failing to certify the rear lot property corners––or
by breaching its warranty to provide a competent product––that the damage to
the homes built by Morrison resulted from such breaches.  SDC points also to
Adams’s affidavit and the Wilson reports; however, as we have explained above,
Adams’s causation opinion is conclusory and thus no-evidence.  And the Wilson
reports do not attribute a cause to the damages to the homes other than
subsurface soil movement, which the reports say is common for homes in that
area.  Accordingly, we conclude and hold that the trial court did not err by
granting a no-evidence summary judgment on C&B’s breach of contract and
breach of warranty claims.

Objections

          SDC
complains in its sixth issue that the trial court abused its discretion by
sustaining C&B’s objections to some of SDC’s summary judgment evidence. 
SDC contends that the trial court’s sustaining the objections improperly caused
the rendition of an improper verdict because it excluded evidence of C&B’s
breach of duties to SDC and of SDC’s resulting damages.  The only statement in
the excluded letters that SDC contends is evidence of causation is the
following:  “Provided that these same measurements [taken in 2010] were
taken in 2001, a reasonable and prudent surveyor would have brought these
differences to the engineer’s attention and the engineer would not have been
able to certify lot grades at the rear property corners as required by the
contract.”  [Emphasis added.]  The complained-of evidence does not provide
evidence of causation in that it contains nothing about the state of the
property in late 2001 and early 2002 and speaks only in terms of speculation. 
Thus, even if the trial court abused its discretion by sustaining C&B’s
objections and excluding the evidence, SDC would still not have met its burden
to bring forward sufficient evidence of causation.  See Plunkett v. Conn.
Gen. Life Ins. Co., 285 S.W.3d 106, 116–17 (Tex. App.––Dallas 2009, pet.
denied).  We overrule SDC’s sixth issue.

Negligent
Misrepresentation

          SDC
contends that it presented evidence of negligent misrepresentations by C&B
in two January 21, 2002 letters regarding the project, in which C&B stated
the following:

On this date,
representatives of [C&B] made a visual observation of the as-built lot
grading for this subdivision.  Based on this observation:

 

●  All of the
lots generally conform to the As-Built Lot Grading Plans for the subdivision, and
it appears that no significant cut or fill work should be required to render
each lot buildable.

 

●  Lot pads and
lot swales are generally constructed as shown on the Lot Grading Plans.

 

[Emphasis
added.]

          Although
a party’s actions may breach duties in tort, contract, or both, Texas
jurisprudence has long recognized that “mere nonfeasance under a contract
creates liability only for breach of contract.”  Crawford v. Ace Sign, Inc.,
917 S.W.2d 12, 13 (Tex. 1996).  Thus, tort damages are generally not
recoverable unless the plaintiff suffered an injury that is independent and
separate from the economic losses recoverable under a breach of contract claim.
 See Formosa Plastics Corp., USA v. Presidio Eng’rs & Contractors, Inc.,
960 S.W.2d 41, 45–47 (Tex. 1998) (op. on reh’g).  The independent injury rule
applies to claims for negligent misrepresentation.  See D.S.A., Inc. v.
Hillsboro ISD, 973 S.W.2d 662, 663–64 (Tex. 1998); Cessna Aircraft Co.
v. Aircraft Network, L.L.C., 213 S.W.3d 455, 467 (Tex. App.––Dallas 2006,
pets. denied) (op. on reh’g).

          According
to C&B, the representations in italics above were outside the scope of the
contract between the parties.  The contract provided that C&B was
responsible for providing final lot grading plans as part of the contracted
engineering services.  It also provided that after the completion of pad
grading, the “Engineer (Surveyor) [would] check pad grade elevations to within
(+0.30’) [and] provide certification of pad grades in writing to verify
substantial completion.”  Substantial completion does not appear to be defined
in the contract, but in SDC’s contract with Morrison, one of the requirements
for “substantial completion” of the lots to be purchased by Morrison is that
the “Project Engineer shall have certified to [Morrison] that each Lot has been
rough graded per the engineered Grading Plan and that no ‘cut or fill’ work in
excess of .3 feet will be necessary for [Morrison] to achieve finished
ground elevations as required by the Grading Plan.”

          Grading
refers to the leveling off of a surface.  Merriam Webster’s Collegiate
Dictionary 505 (10th ed. 1996).  A swale is defined as “a low-lying or
depressed and often wet stretch of land.”  Id. at 1189.  Thus, by its
very terms, the contract between SDC and C&B contemplates a certification
that the grading and swales conform to the general lot grading plan. 
Therefore, we conclude and hold that the trial court did not err by determining
that the alleged negligent misrepresentations were not outside the scope of the
contract, that SDC’s cause of action is for breaching of the contract by the alleged
improper certification of the conformance of the lot grading, and therefore
that summary judgment was proper on SDC’s negligent misrepresentation claim.

          Having
held that the trial court did not err by granting summary judgment on each of
SDC’s claims against C&B on either traditional or no-evidence summary
judgment grounds, we overrule SDC’s first, third, and fourth issues.

Summary
Judgment – Attorney’s Fees

          In
its fifth issue, SDC contends that the trial court erred by granting C&B a traditional
summary judgment on its counterclaim for attorney’s fees.  SDC claims that
C&B was not a prevailing party because it did not recover damages and that
its counsel’s supporting affidavit is not competent summary judgment evidence.

          The
contract between C&B and SDC provided that the losing party would pay the
prevailing party reasonable fees, costs, and expenses.  Because we have held
that the trial court did not err by granting C&B’s motions for summary
judgment, C&B remains the prevailing party in this litigation.  See City
of Amarillo v. Glick, 991 S.W.2d 14, 17 (Tex. App.––Amarillo 1997, pet.
denied) (holding that a prevailing party is one who successfully defends
against a suit).

SDC
nevertheless contends that the evidence is insufficient to support the fee
award because C&B’s counsel’s uncontroverted affidavit is conclusory in
that it “fail[s] to take into account the established principles regarding the
reasonableness of fees under the lodestar or any other recognized method.”  SDC
also contends that counsel’s estimation that at least eighty-five percent of
his time and fees would have been necessary even if the breach of contract
claim were the only claim in the suit is mere conjecture and thus counsel
failed to properly segregate his fees.

Although
reasonableness of an attorney’s fee award often presents a question of fact, an
affidavit filed by the movant’s attorney that sets forth the attorney’s
qualifications, opinion regarding reasonable attorney’s fees, and basis for the
opinion will be sufficient to support summary judgment, if uncontroverted.  E.g.,
Sundance Minerals, L.P. v. Moore, 354 S.W.3d 507, 514 (Tex. App.––Fort
Worth 2011, pet. denied).  Texas courts consider eight factors when determining
the reasonableness of attorney’s fees:

(1) the time and
labor required, the novelty and difficulty of the questions involved, and the
skill required to perform the legal service properly;

 

(2) the
likelihood . . . that the acceptance of the particular
employment will preclude other employment by the lawyer;

 

(3) the fee
customarily charged in the locality for similar legal services;

 

(4) the amount
involved and the results obtained;

 

(5) the time
limitations imposed by the client or by the circumstances;

 

(6) the nature
and length of the professional relationship with the client;

 

(7) the
experience, reputation, and ability of the lawyer or lawyers performing the
services; and

 

(8) whether the
fee is fixed or contingent on results obtained or uncertainty of collection
before the legal services have been rendered.

 

Arthur
Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997)
(op. on reh’g); Gaughan v. Nat’l Cutting Horse Ass’n, 351 S.W.3d 408,
422 (Tex. App.––Fort Worth 2011, pet. denied).

In
the affidavit, counsel set forth his qualifications, including that he has been
a licensed attorney in the State of Texas since 1995 and is familiar with
reasonable and necessary fees charged in Tarrant County.  Counsel stated that
in preparing the affidavit, he had reviewed the billing records of his firm and
that he had relied on Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d
299, 313–14 (Tex. 2006), in identifying “discrete legal services that either
specifically concerned [SDC’s] breach of contract claim or that were discrete
legal services that advanced the summary judgment for breach of contract, and
[were] intertwined with other claims, defenses and issues.”  Counsel then
summarized the central points of SDC’s claims against C&B and stated that
“[t]o defend any of these claims, [C&B] needed to rebut the factual
allegations and contentions of [SDC] and show that [C&B’s] professional
services were within the applicable standard of care.  [C&B] further needed
to pursue valid legal defenses.”  Counsel summarized the type of work performed
by C&B’s legal team––drafting and responding to discovery, reviewing
documents, conducting research, drafting and filing motions, attending
hearings, attending site visits, and attending and participating in several
depositions––and opined that “[t]hese activities would have had to occur even
if the only claims in this case had been [SDC’s] claim that [C&B] breached
its contract and [C&B’s] counterclaim for attorneys’ fees.”  Counsel then
opined that at least eighty-five percent of the time spent by C&B’s legal
team would have been necessary even if the only claims pending were the breach
of contract and attorney’s fees claims.

Counsel
went on to specify that he charged a reduced hourly rate of $235 in this case;
he also listed reduced hourly rates for four associates and two paralegals who
assisted in the litigation.  Counsel averred that he personally reviewed the
billing records attached to the affidavit,[11] which showed attorney’s
fees of $300,597.35, and that those fees were calculated by multiplying the
number of hours by the rate of the attorney performing the work.  Counsel
averred that this total is reasonable and necessary for this matter and usual
and customary “in this area” for the same or similar services provided by
attorneys with similar experience, reputation, and ability.  Counsel further
averred that

Based on reviewing
the bills, my knowledge of the work required, and the law, the procedures and
facts involved, it is my estimate that handling the breach of contract claim
constituted at least 85% of the attorney time of the entire case.  As discussed
herein, it is my opinion that (at a minimum) 85% of these fees, totaling $255,507.75
($300,597.35 X 85% = $255,507.75) would have been necessary if the only claims
pending were [SDC’s] claim for breach of contract and [C&B’s] counterclaim
for attorney fees.  Further, [C&B’s] counterclaim was both legally and
factually intertwined with [SDC’s] claim for breach of contract.  Based on my
professional knowledge and experience, $255,507.75 constitutes a reasonable and
necessary attorney fee for handling the breach of contract claim and
[C&B’s] counterclaim for attorneys’ fees, as of this date.

 

Thus,
counsel provided evidence of at least three of the Arthur Andersen
factors––the time and labor required, the customary local fee, and the
experience of the lawyers providing services.  Additionally, counsel
demonstrated to the trial court how he calculated the fee he was requesting and
explained the percentage of the work attributable to the claims.  Accordingly,
we conclude and hold that counsel’s affidavit was not conclusory and based upon
conjecture and that it properly segregated the fees under the principles of Tony
Gullo Motors; thus, the affidavit was sufficient evidence supporting the
trial court’s attorney’s fees award.  See Tony Gullo Motors, 212 S.W.3d
at 314; Tex. Commerce Bank Nat’l Ass’n v. New, 3 S.W.3d 515, 517–18
(Tex. 1999); RM Crowe Prop. Servs. Co. v. Strategic Energy, L.L.C., 348
S.W.3d 444, 453 (Tex. App.––Dallas 2011, no pet.); Werley v. Cannon, 344
S.W.3d 527, 536 (Tex. App.––El Paso 2011, no pet.).

Moreover,
despite SDC’s claim that C&B did not plead for appellate attorney’s fees,
we conclude and hold that the issue was tried by consent.  See Tex. R.
Civ. P. 67; Trinh v. Lang Van Bui, No. 14-11-00442-CV, 2012 WL 5378112,
at *10 (Tex. App.––Houston [14th Dist.] Nov. 1, 2012, no pet. h.)
(mem. op.).

Finally,
SDC argues that the affidavit was incompetent because it was not served within
twenty-one days of the hearing on the motions; however, SDC did not object on
those grounds in the trial court and in fact agreed to the hearing and
shortened notice date.  See Simmons v. Kuzmich, 166 S.W.3d 342, 351
(Tex. App.––Fort Worth 2005, no pet.); Fraud-Tech, Inc. v. Choicepoint, Inc.,
102 S.W.3d 366, 377 & n.31 (Tex. App.––Fort Worth 2003, pet. denied).

Thus,
we conclude and hold that the trial court did not err by granting summary judgment
for C&B on its claim for attorney’s fees.  We overrule SDC’s fifth issue.

Conclusion

          Having
overruled SDC’s nine issues, we affirm the trial court’s judgment.

 

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL:  LIVINGSTON, C.J.; GARDNER and GABRIEL, JJ.

 

DELIVERED: 
December 21, 2012









[1]See Tex. R. App. P. 47.4.





[2]SDC had previously named
C&B as a third-party defendant around May 26, 2009, but it
nonsuited its claims on October 22, 2009 after C&B filed a motion
to dismiss.





[3]The trial court had
already disposed of SDC’s claims against the other third-party defendants.





[4]At that time, Morrison’s
suit had been pending for almost three years.





[5]The deadline for
completion of discovery at that time was July 25, 2010; the motion
for continuance, however, requested only that trial be set for the first
available jury docket after June 22, 2009 and did not contain any
other date to which the discovery deadline should be extended.





[6]This court disposed of the
interlocutory appeal on March 3, 2011, and the supreme court denied
the petition for review on January 27, 2012.  CTL/Thompson Tex.,
LLC v. Morrison Homes, 337 S.W.3d 437 (Tex. App.––Fort Worth 2011, pet.
denied).





[7]Additionally, because the
trial court here did not prevent SDC from accessing the lots in question or from
developing facts to support its case through its own expert, we do not agree
with SDC’s description of the trial court’s order as imposing death penalty
sanctions.  Cf. Chrysler Corp. v. Blackmon, 841 S.W.2d 844, 845 (Tex.
1992) (defining death penalty sanction as a sanction that terminates the
presentation of the merits of a party’s claims).





[8]The same standard of
review applies to claims of a lack of adequate discovery before a trial court
grants a traditional summary judgment.  Cooper v. Circle Ten Council Boy
Scouts of Am., 254 S.W.3d 689, 696 (Tex. App.––Dallas 2008, no pet.).





[9]SDC sought contribution
from C&B under chapter 33 of the civil practice and remedies code; thus,
its contribution claim applies only to Morrison’s tort claims against SDC and
not the breach of contract and breach of express warranty claims.  See
Tex. Civ. Prac. & Rem. Code Ann. § 33.002 (West 2008); CBI NA-CON,
Inc. v. UOP, Inc., 961 S.W.2d 336, 341 (Tex. App.––Houston [1st Dist.]
1997, pet. denied); see also Med. City Dallas, Ltd. v. Carlisle Corp.,
251 S.W.3d 55, 61–62 (Tex. 2008) (holding that breach of express warranty
claims are contractual in nature).





[10]SDC makes the same
argument regarding the negligent misrepresentation claim, but we do not address
it in that context because we dispose of the negligent misrepresentation claim
on traditional summary judgment grounds.





[11]The affidavit has 140
pages of billing records attached, which identify the different lawyers and
paralegals by initials and which detail the work done.  Cf. El Apple I, Ltd.
v. Olivas, 370 S.W.3d 757, 763 (Tex. 2012) (“[W]hen there is an expectation
that the lodestar method will be used to calculate fees, attorneys should
document their time much as they would for their own clients, that is,
contemporaneous billing records or other documentation recorded reasonably
close to the time when the work is performed.”).