

Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★ ★



# OPINION

No. 04-10-00616-CV

**IN THE GUARDIANSHIP OF** Otilia **PATLAN**, an incapacitated person

From the Probate Court No 2, Bexar County, Texas
Trial Court No. 2007-PC-0832
Honorable Tom Rickhoff, Judge Presiding

Opinion by:    Karen Angelini, Justice

Sitting:    Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  May 11, 2011

AFFIRMED

Appellant Mary Pena, Otilia Patlan's guardian, appeals the trial court's granting of Appellee Jesus Patlan Jr.'s no-evidence and traditional motion for summary judgment. The main issue in this appeal is whether the time period a previous lawsuit is pending before being dismissed for want of prosecution, when that lawsuit is between the same parties and contains the same allegations, should be considered in determining whether an adequate time for discovery has passed in the subsequent suit pursuant to Texas Rule of Civil Procedure 166a(i). Because we hold such time can be considered in determining whether an adequate time for discovery has passed under Rule 166a(i), we find the trial court did not abuse its discretion in denying Mary Pena's motion to continue the summary judgment hearing. Further, because Mary

Pena did not produce sufficient evidence in response to the no-evidence motion for summary judgment, we hold the trial court did not err in granting the no-evidence motion for summary judgment. Thus, we affirm the judgment of the trial court.[1]

## BACKGROUND

Otilia Patlan is a ninety-six-year-old woman who suffers from senile dementia. Otilia and her husband, Jesus Patlan Sr., married in 1971, but had no children together. However, they each had children from previous marriages. Appellant Mary Pena ("Mary"), who was appointed Otilia's guardian on June 20, 2007, is Otilia's daughter.

At the time of Otilia and Jesus Sr.'s marriage, Appellee Jesus Patlan Jr. ("Jesus Jr.") was the youngest in this blended family and considered Otilia to be his mother, not a step-mother. He lived with his parents until his mid-twenties, and as his parents grew older, he began taking care of them and managing their affairs. He and his father even had a joint bank account set up so that Jesus Jr. could pay his father's bills. When his father died in 2005, he took over the same role for his mother. Thus, Jesus Jr., who was an employee of Broadway National Bank, had a joint account set up in his and his mother's names. Otilia signed all the necessary documents to set up the joint account. The funds from his father's pension, which now belonged to his mother as survivorship benefits, were deposited into that joint account. Also deposited were proceeds from his father's life insurance policy under which Otilia was the beneficiary.

In January 2007, Otilia's condition deteriorated to such an extent that she had to be admitted to a hospital. She was later transferred to a nursing home for rehabilitation. On June 20, 2007, her daughter Mary was appointed her guardian. In looking at Otilia's personal affairs, Mary became suspicious that Jesus Jr. was using Otilia's funds for his own personal benefit, and

---

[1]Because we hold the trial court did not err in granting Jesus Patlan Jr.'s no-evidence motion for summary judgment, we need not reach the issue of whether the trial court should have granted the traditional motion for summary judgment.

not for Otilia's. Mary hired an attorney who, on January 31, 2008, filed an original petition and application for a temporary restraining order. That same day, the trial court signed the temporary restraining order and set the cause for a temporary injunction hearing. In response Jesus Jr. filed an answer to the lawsuit.

At the temporary injunction hearing on March 4, 2008, Jesus Jr. took the stand and testified. He testified that the culture of his family was such that everyone helped whoever needed the help. He testified that before his father's death, his wife had lost her job, and his father had been helping them through a tough period. After his father died, he testified that his mother also wanted to help them. Jesus Jr. admitted that some of his mother's money was used for the benefit of his own family, but he claimed that these were gifts from his parents. He further testified his mother knew he was taking money out of the joint account and wanted him to do so because of his family's situation.

According to Jesus Jr., he was not aware his mother suffered from dementia. He testified that Mary, who worked for Otilia's treating doctor, took care of Otilia's medical care and that Mary never told him about Otilia's condition. He also testified that in 2007, at some point before Mary was appointed Otilia's guardian, Adult Protective Services got involved in Otilia's case, and the case worker told him that he was not keeping a proper accounting of Otilia's bank account. The caseworker told him that he needed to be more "formal" and should not commingle funds. Jesus Jr. also testified that Mary had taken the approximate $6,000 left in Otilia's bank account and that he had nothing left of Otilia's money.

Jesus Jr. further testified about the family home. According to Jesus Jr., his father had owned the family home before his marriage to Otilia and thus, the family home was his father's separate property. And, because his father did not have a will, he and his four siblings now

owned the house as his father's heirs. He testified that Otilia signed a deed transferring all her interest in the family home to him. However, under Texas intestate laws, Otilia had only a life-estate interest in the home and no longer lived there, as she was living with Mary. Jesus Jr. also testified that in keeping with his family's "culture," one of his step-sisters (the youngest of Otilia's daughters) now lived in the family home with her son and paid only $250 per month in rent, which was below the rental value of the house in the open market. Finally, according to Jesus Jr., his parents would not want him to pay back the money he took because it was not part of their family culture to require repayment. At the hearing, copies of the bank statements from the joint bank account were not available. At the end of the injunction hearing, the trial court dissolved the TRO and denied the temporary injunction.

A month later, on April 8, 2008, Jesus Jr.'s attorney sent Mary's attorney copies of the bank statements related to Jesus Jr. and Otilia's joint bank account. Then, there was no activity in the case for almost a year.

On March 4, 2009, Mary's current attorneys[2] filed in probate court an "Application for Authority to Retain Counsel and to Enter into a Contingent Fee Contract." On May 8, 2009, the trial court granted the application. Then, on July 15, 2009, Mary's current attorneys filed in district court, not probate court, a "Verified Petition to Take a Deposition Before Suit," requesting authority to take presuit depositions of Jesus Jr. and Broadway National Bank.[3] On July 23, 2009, Jesus Jr. filed in the district court a motion to transfer the case to the probate court, and on August 21, 2009, the cause was transferred to the probate court. On September 18,

---

[2] The record does not reflect why Mary's former attorney was no longer an attorney in this case.

[3] The record does not reflect why Mary's current attorneys filed a petition in district court to take a "presuit" deposition of Jesus Jr. when Mary had already filed a lawsuit in probate court against Jesus Jr. At oral argument, one of Mary's current attorneys admitted that she had been aware of the previous lawsuit filed by Mary against Jesus Jr. in the probate court and the injunction hearing in that lawsuit. However, Mary's current attorney claimed to have been unaware of what specific documents had been filed or exchanged in that lawsuit because Mary's previous attorney had not given Mary his file.

2009, the trial court signed an order allowing Mary to take the oral deposition of the corporate representative of Broadway National Bank. The trial court also ordered that Mary was allowed to take the oral deposition of Jesus Jr., but limited the scope of such deposition to the facts and circumstances surrounding the signature cards relating to the joint account made the basis of the suit. Mary's current attorneys took the deposition of a representative from Broadway National Bank.[4] However, they never deposed Jesus Jr.

On February 16, 2010, even though she had already filed a petition against Jesus Jr., Mary filed another "original" petition against Jesus Jr., alleging conversion, theft, fraud, constructive trust, and rescission. On March 12, 2010, Jesus Jr. filed an answer and a motion to dismiss for want of prosecution. In his motion, Jesus Jr. emphasized that there had been no action on the case for a year and a half, that Mary's second "original" petition contained the same allegations as her first one, and that Mary had made no attempt to depose him. On April 1, 2010, Mary responded to the motion to dismiss for want of prosecution, arguing that neither she nor her attorneys were aware of what discovery had been conducted or what pleadings were filed between January 2008 and January 2009 because Mary's former attorney had failed to provide any of the documents. Mary's response also stated that her current attorneys had been unaware of the previous lawsuit and that "accident and mistake" had led to the filing of the second "Original" Petition, which they admitted should have been titled "First Amended Petition." On April 26, 2010, the trial court granted Jesus Jr.'s motion and dismissed Mary's case for want of prosecution without prejudice, specifically stating that "[a]ll litigation in this cause filed on or prior to April 1, 2010, is dismissed without prejudice to refiling."

---

[4] After taking the deposition, Mary's attorneys determined that Otilia did not have a claim against the bank.

On April 5, 2010,[5] Mary filed another original petition, alleging common law fraud, statutory fraud, fraud by nondisclosure, and fraud in the inducement. In response, Jesus Jr. filed an answer, which alleged the affirmative defense of limitations, and a motion for no-evidence and traditional summary judgment. On May 12, 2010, Mary filed a motion to continue the summary judgment hearing. She later also filed a response to the summary judgment motion.[6] On May 20, 2010, the trial court denied Mary's motion for continuance. On July 22, 2010, the trial court granted Jesus Jr.'s motion for no-evidence and traditional summary judgment. Mary now appeals.

### MOTION FOR CONTINUANCE

In her motion for continuance, Mary argued that the trial court should continue the summary judgment hearing because an adequate time for discovery had not yet passed. She emphasized in her motion that the case had been on file for only one month and that no discovery had been conducted in the case. Mary argued that since filing the lawsuit on April 5, 2010, she had not had the opportunity to depose Jesus Jr. or to send him discovery requests. Mary also argued that in order to respond to Jesus Jr.'s summary judgment motion, she needed to "confer with and obtain affidavits from Plaintiff's expert, Julian R. Cantu, M.D.[7] and Mary Pena."[8]

On May 19, 2010, at the hearing on the motion for continuance, Mary's attorney argued that additional time was needed to obtain testimony from Dr. Cantu about whether Otilia was capable of transferring her interest in the family home to Jesus Jr. at the time she signed the deed

---

[5] A hearing was held on April 1st on the motion to dismiss, but there is no reporter's record of the hearing. At the motion to continue the summary judgment hearing, Mary's attorney makes reference to the trial court dismissing Mary's case on April 1st. Thus, it appears the trial court orally granted Jesus Jr.'s motion to dismiss on April 1st, but did not sign the order dismissing the case for want of prosecution until April 26, 2010, at which point the trial court was aware that Mary had filed a new petition on April 5th.

[6] Although there is a reporter's record of the hearing on the motion for continuance, there is no reporter's record of the summary judgment hearing, which was held much later.

[7] Dr. Cantu was Otilia's treating doctor and Mary's employer.

[8] Mary's attorneys did not indicate in Mary's motion for continuance why they would need additional time to obtain their client's affidavit.

or whether she was capable of consenting to Jesus Jr. withdrawing money from their joint bank account. Mary's attorney then stated that she had requested the bank documents regarding the joint account from Broadway Bank, but had not yet received anything.[9] The trial court did not rule at the hearing, but the next day signed an order denying Mary's motion to continue the summary judgment hearing.

In her first issue on appeal, Mary argues that the trial court abused its discretion in denying her motion to continue the summary judgment hearing because an adequate time for discovery had not passed as required under Texas Rule of Civil Procedure 166a(i). When a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). Here, Mary's motion for continuance was verified by her attorney.

We review the trial court's decision to grant or deny a motion for continuance for abuse of discretion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *see also Tenneco*, 925 S.W.2d at 647. A trial court abuses its discretion only when it acts in an unreasonable and arbitrary manner, or when it acts without reference to any guiding rules and principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). Thus, we may not reverse a trial court's ruling for an abuse of discretion merely because we may disagree with that decision. *Id.*

The function of summary judgment is not the deprivation of a party's right to a full hearing on the merits of any real issue of fact, but rather to "eliminate patently unmeritorious claims and untenable defenses." *Casso v. Brand*, 776 S.W.2d 551, 555 (Tex. 1989) (quotation omitted). Thus, under Texas Rule of Civil Procedure 166a(i), a party may not move for a no-

---

[9] The hearing on the motion for continuance was held on May 19, 2010. The record request to Broadway Bank was filed in the district clerk's office on May 20, 2010. And, the request indicates that it was sent to Broadway Bank on May 18th, the day before the hearing.

evidence summary judgment until after an adequate time for discovery has passed. TEX. R. CIV. P. 166a(i). Notably, Rule 166a(i) does not require that discovery must have been completed, but rather that there was "adequate time." *McInnis v. Mallia*, 261 S.W.3d 197, 200 (Tex. App.—Houston [14th Dist.] 2008, no pet.). The comment to rule 166a(i) provides that "[a] discovery period set by pretrial order should be adequate opportunity for discovery unless there is a showing to the contrary, and ordinarily a motion under paragraph (i) [a no-evidence motion] would be permitted after the period but not before." TEX. R. CIV. P. 166a(i) cmt. Unlike other notes and comments in the rules of civil procedure, this comment was specifically "intended to inform the construction and application of the rule." TEX. R. CIV. P. 166a(i) cmt.

Pointing to this language, Mary emphasizes she filed her lawsuit on April 5, 2010, and Jesus Jr. filed his no-evidence motion for summary judgment soon thereafter on April 22, 2010. She argues that a time period of seventeen days from when the lawsuit is filed does not constitute adequate time. However, in so arguing, Mary completely disregards the time period the previous lawsuit had been on file before it was dismissed for want of prosecution. Thus, the issue in this case is whether the time period a previous lawsuit is pending before being dismissed for want of prosecution, when that lawsuit is between the same parties and contains the same allegations, should be considered in determining whether an adequate time for discovery has passed in the subsequent lawsuit. We have found no case addressing this issue, and the parties have not directed us to such a case.

Generally, in considering whether the trial court permitted an adequate time for discovery, we consider the following factors: (1) the nature of the case, (2) the nature of the evidence necessary to controvert the no-evidence motion, (3) the length of time the case was active, (4) the amount of time the no-evidence motion was on file, (5) whether the movant had

requested stricter deadlines for discovery, (6) the amount of discovery that already had taken place, and (7) whether the discovery deadlines in place were specific or vague. *McInnis*, 261 S.W.3d at 201. We review a trial court's determination that there has been an adequate time for discovery on a case-by-case basis, under an abuse-of-discretion standard. *Id.*

### 1. *The Nature of the Case and Evidence Needed to Defeat Motion*

This case is not of a nature that would seem to require extensive or complex discovery. *See Rest. Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 340 (Tex. App.—Dallas 2002, no pet.). None of Mary's claims would require more than minimal discovery to defeat a no-evidence motion for summary judgment. *See id.* In fact, in her motion for continuance and at the hearing on the motion, all Mary argued she needed to do to respond to the motion for summary judgment was to take Jesus Jr.'s deposition, obtain an affidavit from Otilia's doctor about Otilia's medical condition, authenticate the bank records from the joint bank account, and authenticate the deed transferring Otilia's interest in the family home to Jesus Jr.

### 2. *The Length of Time the Case was Active*

This factor, of course, depends on whether the time the previous case had been pending should be considered in determining whether an adequate time for discovery had passed. Mary argues that the time the previous case had been on file should not be considered, as the previous case was dismissed without prejudice. However, whether a case is dismissed with or without prejudice does not really go to the issue of whether there has been an adequate time for discovery. A dismissal with prejudice is a final determination on the merits and prevents a party from re-filing a case under the doctrines of res judicata or collateral-estoppel. *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991). Thus, the plaintiff can appeal the dismissal but cannot re-file the same lawsuit unless the dismissal is reversed on appeal. *See id.* In contrast, a dismissal

without prejudice is not a final determination on the merits. Thus, if the statute of limitations has not run, a case may be re-filed without appealing the order of dismissal. *Webb v. Jorns*, 488 S.W.2d 407, 409 (Tex. 1972). Here, however, whether a party has had an adequate time for discovery is not related to the question of whether a case may be re-filed.

Looking at the language of Rule 166a(i), the rule states that "[a]fter an adequate time for discovery," a party may move for a no-evidence motion for summary judgment. TEX. R. CIV. P. 166a(i). The rule does not explicitly state whether "adequate time" refers to only the instant suit or whether it can refer to a previous lawsuit, between the same parties and involving the same allegations, that has been dismissed for want of prosecution. Instead, it refers only to "adequate time." And, in this case, Mary clearly had "adequate time" to conduct discovery. Mary filed her original petition in her original lawsuit on January 31, 2008. At the time Jesus Jr. moved to dismiss her original lawsuit for want of prosecution, she had had over two years to conduct discovery. And, at the time the trial court granted Jesus Jr.'s no-evidence motion for summary judgment, Mary had had almost two-and-a-half years to conduct discovery.

Mary argues that most of the time her previous lawsuit was pending should not count because her previous attorney was derelict in his duty to prosecute her case. However, the actions of an attorney, as his client's agent, necessarily binds the client. *See Gracey v. West*, 422 S.W.2d 913, 916 (Tex. 1968) (holding that attorney's negligence in failing to prosecute lawsuit was not ground for setting aside judgment dismissing cause for want of prosecution because "as long as the attorney-client relationship endures, with its corresponding legal effect of principal

and agent, the acts of one must necessarily bind the other as a general rule").[10] Therefore, the actions of her previous attorney are not considered in looking at how long her case was active. And, Mary's case was active for an extended period of time.

3. *The Length of Time the No-Evidence Motion was on File*

Jesus Jr. filed the no-evidence motion for summary judgment on April 22, 2010. The summary judgment hearing occurred on July 20, 2010. Thus, the no-evidence motion for summary judgment was on file for almost ninety days at the time of the summary judgment hearing. Further, we note that Rule 166a(i) does not mandate a minimum period of time a case must be pending before a motion may be filed, as long as there was adequate time for discovery. *Rest. Teams*, 95 S.W.3d at 340; *see* TEX. R. CIV. P. 166a(i).

4. *Status of Discovery*

Mary argued in her motion for continuance that she needed time to depose Jesus Jr., retrieve bank records, prepare an affidavit from Otilia's treating doctor, and prepare her own affidavit. As noted above, because the time period Mary's previous case was on file should be considered in determining whether an adequate time for discovery had passed, Mary had more than sufficient time to accomplish these tasks.

Looking at the above factors, we hold that the trial court did not abuse its discretion in denying Mary's motion for continuance.

---

[10] We further note that although not briefed, Mary's attorney raised the issue during oral argument that she was prevented from fully deposing Jesus Jr. by the trial court's presuit deposition order of September 18, 2009, which limited the scope of any deposition of Jesus Jr. to the facts and circumstances surrounding the signature cards relating to the account made the basis of the suit. However, there is nothing in the record to reflect that Mary was prevented from fully taking Jesus Jr.'s deposition before the trial court's order of September 18, 2009, nor is there any indication that Mary ever went back to the trial court after September 18, 2009, to request that the scope of Jesus Jr.'s deposition be expanded.

## NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

Under Rule 166a(i), a party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX. R. CIV. P. 166a(i). The trial court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact. *Id.* The respondent is "not required to marshal its proof; its response need only point out evidence that raises a fact issue on the challenged elements." TEX. R. CIV. P. 166a(i) cmt. In reviewing a trial court's order granting a no-evidence summary judgment, we consider the evidence in the light most favorable to the respondent and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). Thus, a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Id.* at 751; *see* TEX. R. CIV. P. 166a(i). In determining if the respondent has brought forth more than a scintilla of evidence, we consider whether the evidence would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

In her live petition, Mary brought the following claims against Jesus Jr.: common law fraud, fraud in the inducement, fraud by nondisclosure, and statutory fraud. She also requested the creation of a constructive trust based on fraud. In his no-evidence motion for summary judgment, Jesus Jr. argued that Mary had no-evidence to support specific elements of these claims.

1.  *Common Law Fraud, Fraud in the Inducement, and Fraud by Nondisclosure*

To bring a claim for common law fraud, a plaintiff must show the following: (1) a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001) (orig. proceeding). To bring a claim for fraud in the inducement, a plaintiff must show the elements of fraud, *see Balogh v. Ramos*, 978 S.W.2d 696, 701 (Tex. App.—Corpus Christi 1998, pet. denied), and must show that she has been fraudulently induced to enter into a binding agreement. *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001) ("Without a binding agreement, there is no detrimental reliance, and thus no fraudulent inducement claim. That is, when a party has not incurred a contractual obligation, it has not been induced to do anything.").

In his no-evidence motion for summary judgment, Jesus Jr. argued that Mary had no evidence that (1) he made any sort of material misrepresentation to Otilia; (2) any representation made by Jesus Jr. was false; (3) when any alleged misrepresentation was made, he knew it was false; (4) he made any representation with the intent that Otilia act on it; (5) Otilia reasonably relied on a representation made by Jesus Jr.; and (6) Otilia entered into a binding agreement based on the false misrepresentation. With respect to fraud by nondisclosure, Jesus Jr. argued in his no-evidence motion that Mary cannot show he concealed from or failed to disclose material facts to Otilia. He emphasizes in his appellate brief that Otilia was aware of their financial

arrangements and that she had signed signature cards and account designation documents at the bank.

In her brief, Mary argues that she did present some evidence that Jesus Jr. concealed or failed to disclose certain facts to Otilia. She points to Jesus Jr.'s testimony during the injunction hearing where he testified that he used some of the money from the joint bank account for his personal expenses because his wife was unemployed. However, Jesus Jr. also testified that his mother consented to these withdrawals. Mary argues that Jesus Jr. should have known that Otilia was unable to approve such withdrawals as she had been diagnosed with senile dementia. For this proposition, Mary points to her own affidavit in which she affirms that "[i]n early 2002, Dr. Julian R. Cantu diagnosed Mrs. Patlan with senile dementia."[11] However, while this statement is evidence that Dr. Cantu diagnosed Otilia with senile dementia, it is not evidence that *Jesus Jr. knew* Otilia had been diagnosed with senile dementia. And, at the injunction hearing, Jesus Jr. testified that he believed Otilia was capable of giving consent and that he did not know she had been diagnosed with dementia. According to Jesus Jr., although he sometimes took Otilia to doctor's appointments, the only thing he knew "at the time was that, you know, she was under medications as far as for blood pressure. Trying to think of — she was taking a lot of medications but we were never told what everything was for. We were never told what the situation was." According to Jesus Jr., "Mary was the one [who] worked at the doctor's office, so she would oversee whatever Dr. Cantu said. So we relied on her to fill us in on whatever

---

[11] We note that Jesus Jr. filed written objections to Mary's affidavit, arguing that it was based on hearsay and speculation, and constituted improper expert testimony. However, there is nothing in the record to reflect that Jesus Jr. obtained a ruling on his objections. Nevertheless, we note that Jesus Jr. did not need to object or obtain a ruling on any conclusory statements contained in Mary's affidavit because conclusory statements are insufficient to raise a fact issue. *See Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996); *see also Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 837 (Tex. App.—Dallas 2005, no pet.) (holding affidavit that is nothing more than a sworn statement of allegations in a pleading is conclusory and insufficient to create a fact issue); *Old Republic Sur. Co. v. Bonham State Bank*, 172 S.W.3d 210, 217 (Tex. App.—Texarkana 2005, no pet.) (explaining that "statements of legal conclusions amount to little more than the witness choosing sides on the outcome of the case" and "affidavits containing conclusory statements unsupported by facts are not competent summary judgment proof").

situation was wrong with [Otilia]." When asked whether Mary had told him that Otilia had been diagnosed with senile dementia, Jesus Jr. replied, "[S]he never told us." As evidence that Jesus Jr. knew his mother had senile dementia, Mary also points to Jesus Jr.'s testimony at the injunction hearing that a case worker from Adult Protective Services told him that he needed to be "more formal" with the joint bank account. However, Jesus Jr. testified that Adult Protective Services became involved with his mother's case right before Mary was appointed his mother's guardian in 2007. This is not evidence that relates to the time period at issue – 2005.

With respect to her claim for fraud by nondisclosure, Mary also argues that Jesus Jr. had a fiduciary duty to disclose material facts to Otilia and that by not disclosing all the money transactions made by him for his own personal use, he committed fraud. In support of this statement, Mary points to the copies of the bank records from the joint account. However, while the bank records are evidence that transactions occurred; they are not evidence that Jesus Jr. failed to disclose those transactions to Otilia. Jesus Jr. testified at the injunction hearing that Otilia knew about the transactions. According to Jesus Jr., he was just handling the family finances, like he had for his father, and his mother knew about it. Mary, once again, points to Otilia having senile dementia, but as noted above, there is no evidence Jesus Jr. knew about her senile dementia. Therefore, we hold that Mary did not bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact with respect to her claims for common law fraud, fraud in the inducement, and fraud by nondisclosure.

2. *Statutory Fraud*

To bring a claim for statutory fraud, Mary must show the following: (1) the transaction involved real estate; (2) Jesus Jr. made a false representation of a material fact or made a false promise to do an act to Otilia, or benefited by not disclosing that a third party's representation or

promise was false; (3) the false representation was made for the purpose of inducing Otilia to enter into a contract; (4) Otilia relied on the false representation or promise in entering into the contract; and (5) the reliance caused Otilia injury. *See* TEX. BUS. & COM. CODE ANN. § 27.01 (West 2009) (titled "Fraud in Real Estate and Stock Transactions"); *Fletcher v. Edwards*, 26 S.W.3d 66, 77 (Tex. App.—Waco 2000, pet. denied) ("A plaintiff establishes a statutory fraudulent inducement claim under section 27.01 of the Business and Commerce Code by showing: a false representation of a material fact; made to induce a person to enter a contract; and relied on by that person in entering the contract."). The statutory cause of action differs from the common law only in that to recover actual damages, it does not require proof that the defendant made a material false representation knowing it to be false or made it recklessly as a positive assertion without any knowledge of its truth. *Fletcher*, 26 S.W.3d at 77.

In his no-evidence motion, Jesus Jr. argued that Mary cannot prove that he made a false misrepresentation of fact to Otilia, or benefited by not disclosing a third party's representation or promise was false. Similarly, he argued that Mary cannot show that any representation made by him was made for the purpose of inducing Otilia to enter into a real estate contract. He also argued that Mary cannot show that Otilia relied on the false representation or promise by entering into the contract. And, Jesus Jr. argued that Mary cannot show that Otilia reasonably relied on a representation made by him, and that therefore there is no evidence that such reliance caused injury. As evidence, Jesus Jr. attached the original warranty deed showing that the family home was his father's separate property. Thus, Jesus Jr. argued that in executing the deed to him, all Otilia conveyed was a life estate interest, which she abandoned when she moved out of the family home.

As evidence of the above elements, Mary once again points to Jesus Jr.'s testimony at the temporary injunction hearing and her own affidavit. The issue again is whether Jesus Jr. knew his mother was suffering from senile dementia and was thus somehow taking advantage of her because he knew his mother was incapable of giving her consent. However, as noted above, Mary failed to produce any evidence that at the time these transactions occurred, Jesus Jr. had any knowledge that his mother suffered from senile dementia.

## CONCLUSION

Because the trial court did not abuse its discretion in denying Mary's motion to continue the summary judgment hearing and because Mary failed to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact, we affirm the judgment of the trial court.


Karen Angelini, Justice