

## Fourth Court of Appeals
### San Antonio, Texas

### OPINION

No. 04-24-00191-CV

**IN THE ESTATE OF** Mitchell Boyd **WILSON**, Deceased

From the County Court, Edwards County, Texas
Trial Court No. 1171
Honorable Polly Jackson Spencer, Judge Presiding

Opinion by:    H. Todd McCray, Justice

Sitting:    Irene Rios, Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: August 27, 2025

AFFIRMED

This appeal arises from a summary judgment involving claims against the estate of Mitchell Boyd Wilson by his surviving spouse, Tamara Wilson. Throughout the course of the underlying probate proceeding, Tamara brought several actions against the Estate. The particular action giving rise to this appeal is a suit seeking a determination of Tamara's community property stake in the Estate. The trial court granted summary judgment and awarded attorney's fees in favor of the Estate. Tamara appeals. We affirm the judgment of the trial court.

## BACKGROUND

Mitchell Boyd Wilson died on May 4, 2021. At the time of his death, he was a shareholder, director and employee of Rebel Contractors, Inc. The father of Wilson's first wife started Rebel and gifted shares of Rebel to Wilson in 1991. In 2002, Wilson married Tamara, and the marriage was in effect at the time of his death. In 2006, Wilson's son from his first marriage, Alex Wilson, joined Rebel and worked there with his father until Wilson's death. Alex is the executor of Wilson's estate. On July 6, 2021, Alex filed an application to probate Wilson's will. The will provided Tamara was to receive $1.00, with the remainder of the estate going to Alex and Wilson's other living children.

Tamara first appeared in the case via a plea in abatement on July 19, 2021. After that time, she filed numerous other motions and pleadings, including a motion to dismiss for lack of jurisdiction, a motion for rehearing, two applications for family allowance, a motion to transfer venue, an opposition and request to amend the estate inventory, an opposition and contest to probate Wilson's will, and the pleading that is the impetus of this appeal: Original Petition-In-Intervention for Declaratory Judgment. The latter was filed June 9, 2023.

By this pleading, Tamara sought a declaratory judgment that (1) Rebel's income, profits and dividends are community property, (2) a ranch purchased and owned by Rebel is community property, (3) the ranch's income, profits, dividends and assets are community property and (4) certain accounts allegedly owned by Wilson at the time of his death are community property. Tamara also sought reimbursement to the community for unpaid labor stemming from her claim that Wilson received inadequate compensation from Rebel for his time, toil, talent and effort while the company was under his control. Tamara further claimed breach of fiduciary duty regarding

Wilson's handling of the community estate. Finally, Tamara sought partition of the community estate, an accounting, and attorney's fees.

From July 18, 2023, to November 3, 2023, the Estate filed five motions for partial summary judgment. On July 10, 2024, Tamara responded to the motions for summary judgment and, by the same response, moved to compel discovery and to continue the hearing in order to obtain discovery. A hearing on the motions was set for January 17, 2024. The trial court ultimately denied the motion for continuance, granted the Estate's evidentiary objection, denied Tamara's evidentiary objection, and granted the motions for summary judgment. The parties agreed to try the issue of attorney's fees to the court by affidavit. The trial court subsequently severed this case from the probate proceedings and issued a final judgment disposing of all issues raised by Tamara's pleadings.

### SECURITY FOR COSTS

Tamara claims that the trial court erred in ordering her to pay security for costs. A court has discretion to "require a person who files a pleading in a probate proceeding to provide security for probable costs before the person is allowed to participate further." TEX. ESTATES CODE ANN. § 53.052(b); *see Ridge v Ridge*, 658 S.W.3d 427, 437 (Tex. App. Houston [14th Dist.] 2022, no pet.). In this case, the trial court ordered Tamara to pay $40,000 as security against the Estate's costs. The enforcement date of the court's order was December 21, 2023. On December 8, 2023, Tamara filed an affidavit of indigency, after which the deadline for security passed with no further action taken on the order. On January 17, 2023, the court heard the Estate's motions for summary judgment and, subsequently, considered the issue of attorney's fees, severed the case from the probate proceedings and entered final judgment, all with no further action on the order for costs.

While failure to comply with a security for costs order could result in the dismissal of a party's claims under Texas Rule of Civil Procedure 143, if the court does not enforce the order, it becomes procedurally inconsequential. *See* TEX. R. CIV. P. 143. Courts have explicitly dismissed claims for failure to comply with a security order, demonstrating that enforcement is critical to the order's legal effect. *See Clanton v. Clark*, 639 S.W.2d 929, 931 (1982); *Ridge*, 658 S.W.3d at 437. It follows, then, that if the court does not dismiss claims or take other enforcement actions, the order does not affect the outcome of the case and is not ripe for appellate review. *Bridgeport Independent School District v. Williams*, 447 S.W.3d 911, 918 (2014) (concluding claims not ripe because alleged injury remained contingent); *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 858 (2004) (finding claims not ripe because alleged controversy was speculative and there was no showing of actual or imminent harm).

The order in this case was not collected upon nor made part of the final judgment. In fact, no action at all was taken to enforce it. Tamara has not demonstrated how the unenforced order created a justiciable controversy, affected the outcome of the proceedings or otherwise prejudiced her in any way. Under these circumstances, we will not address the propriety of the trial court's order on security for costs as it does not present a justiciable controversy ripe for review.

## MOTION FOR CONTINUANCE

Next, Tamara contends that the trial court erred in denying her motion for continuance pursuant to Texas Rule of Civil Procedure 166a(g). Tamara claims that her motion for continuance should have been granted because the Estate failed to provide discovery that was necessary to Tamara's opposition to the motions for summary judgment and because the discovery period was still in its infancy when her motion for continuance was heard on January 17, 2024. Specifically, Tamara claims that the discovery period began with her June 9, 2023, petition asserting community

property claims, and did not end until June 17, 2024. Alternatively, the Estate claims that the discovery period ended on December 23, 2022, following Tamara's first appearance in the probate case via her plea in abatement.

Texas appellate courts have declined to read such a technical time requirement into Rule 166a(i) when its language indicates that a more flexible approach applies. *See Restaurant Teams Int'l, Inc. v. MG Securities Corp.*, 95 S.W.3d 336, 339 (Tex. App.–Dallas 2002, no pet.). The rule does not require the discovery period to have ended before the disposition of a no-evidence summary judgment. *Id*. Instead, the rule requires an *adequate* time for discovery. *Id*. Whether a non-movant has had adequate time for discovery is case specific. *Id*. In considering whether the trial court permitted an adequate time for discovery, we consider various factors, including the nature of the cause of action, the nature of the evidence necessary to controvert the no-evidence motion, the length of time the case had been active in the trial court, the amount of time the no-evidence motion had been on file, whether the movant had requested stricter deadlines for discovery, the amount of discovery already taken place, and whether the discovery deadlines were specific or vague. S*ee Raoger Corp. v. Myers*, 711 S.W.3d 206, 215-16 (Tex. 2025); *In re Guardianship of Patlan*, 350 S.W.3d 189, 196 (Tex. App.—San Antonio 2011, no pet.); *Rankin v. Union Pacific Railway Co.*, 319 S.W.3d 58, 67 (Tex. App.—San Antonio 2010 no pet.). A trial court has broad discretion to grant or deny a motion for continuance. *See Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986); *McAleer v. McAleer*, 394 S.W.3d 613, 617 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Specialty Retailers, Inc. v. Fuqua*, 29 S.W.3d 140, 145 (Tex. App.—Houston [14th Dist.] 2000, no pet.).

A probate proceeding is unique in that it allows for multiple judgments on discrete issues. *See DeAyla v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). Because of this, Tamara argues that she

was entitled to a separate discovery period as to her community property claims. However, the presence of discrete issues does not necessarily render each matter within the proceeding mutually exclusive of the others, especially in matters of trial court discretion. *See Jurgens v. Martin*, 631 S.W.3d 385, 408 (Tex. App.—Eastland 2021, no pet.) (finding discovery orders entered in probate case applicable to underlying proceeding, demonstrating discovery in probate proceedings can transcend discrete issues and affect related actions); *In Guardianship of Macer*, 558 S.W.3d 222, 226 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (noting probate proceedings are considered a "continuing series of events," and decisions made in one phase of the proceeding may impact later phases); *Buck v. Estate of Buck*, 291 S.W.3d 46, 54 (Tex. App.— Corpus Christi-Edinburg 2009, no pet.) (underscoring interconnectedness of discovery within probate disputes).

In this case, Tamara has actively pursued her claim of right to Wilson's property from the time she filed her opposition to the probate of Wilson's will in 2021. The record indicates that the controlling issue in the entire two-and-a-half-year proceeding, with respect to Tamara, involved Tamara's claim to estate property, specifically the company, the ranch and Wilson's accounts. Under these circumstances, it is difficult to say that Tamara did not have adequate time to obtain discovery. Even if the Estate did refuse to cooperate with her discovery requests in the present case, Tamara had over two years to conduct discovery from the Estate specific to the property in question and did in fact receive the discovery she requested. *See In re Guardianship of Patlan*, 350 S.W.3d at 196 (holding period in which first suit was pending before being dismissed could be considered in determining whether adequate time for discovery had passed in second suit since both actions were between same parties and contained similar allegations); *see also Restaurant Teams,* 95 S.W.3d at 340 (finding adequate time for discovery had passed where case pending seven months); *McClure v. Attebury,* 20 S.W.3d 722, 729 (Tex. App.-Amarillo 1999, no pet.)

(finding adequate time for discovery had passed where case pending seven months); *Specialty Retailers,* 29 S.W.3d at 145 (finding adequate time for discovery had passed where case pending sixteen months).

Further, we reiterate the unique nature of this case, note the breadth of the discovery requests at issue and point out the distinct position of the trial court with respect to the relevant factual and procedural background. This case is part of a lengthy probate proceeding in which there have been many separate claims and an abundance of evidentiary requests and objections. The record reflects at least one motion to compel, a motion to quash, a motion for protection, and a protective order since Wilson's will was admitted to probate. Having presided over the entire proceeding, including discovery and evidentiary disputes, from its inception, the trial court was in an ideal position to make an informed determination regarding the overlap of discovery between the present case and the previous probate actions and to the propriety of the requests. We "may not substitute our judgment for that of the trial court in matters committed to the trial court's discretion." *McAleer*, 394 S.W.3d at 617 (noting trial court's broad discretion to grant or deny a continuance). Accordingly, we find no error in the trial court's denial of Tamara's motion for continuance.

## NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A litigant may move for a no-evidence summary judgment dismissing all or part of a lawsuit if there is no evidence of one or more essential element of the adverse party's claim or defense. TEX. R. CIV. P. 166a(i); *Merriman v. XTO Energy, Inc*, 407 S.W.3d 244, 248 (Tex. 2013). The burden then shifts to the respondent, who must present more than a scintilla of probative evidence to raise a genuine issue of material fact. *Forbes Inc. v. Granada Biosciences, Inc.,* 124

S.W.3d 167, 172 (Tex. 2003). If the respondent fails to provide enough evidence, the trial court must grant the motion. *Wyndham Int'l, Inc. v. Ace American Ins. Co.,* 186 S.W.3d 682, 686 (Tex. App.–Dallas 2006, no pet.) We consider the evidence in the light most favorable to the respondent and disregard all contrary evidence and inferences. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750 (Tex. 2003). In determining if the respondent has presented more than a scintilla of evidence, we consider whether the evidence would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton v. Wilson,* 249 S.W.3d 425, 426 (Tex. 2008).

**B.  Company Income, Profits, Dividends and Real Property**

Tamara contends that the trial court erred in granting summary judgment denying her claims that half of the income, profits and dividends of Rebel Contractors, Inc. are community assets and that all or an undivided portion of the company's ranch is a community asset. Specifically, Tamara argues that income and profits were withheld from the community estate and used to purchase real property for Rebel, thus enhancing the value of Wilson's separate property.

First, we address Tamara's claims that evidence offered by the Estate in support of its motion for summary judgment as to the ranch was erroneously admitted over her objection. The evidence about which Tamara complains are the minutes of a Rebel board of directors meeting documenting a discussion regarding the purchase of the ranch. The minutes indicate undistributed corporate earnings were used to purchase the ranch. Tamara objected to the document on optional completeness, hearsay, and authentication grounds.

As to Tamara's optional completeness argument, Rule 107 of the Texas Rules of Evidence provides that "[w]hen part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully

understood or to explain the same may also be given in evidence…." TEX. R. EVID. 107. The intent of the rule is to guard against the possibility of confusion, distortion, or false impression that could be created when only a portion of evidence is introduced. *Crosby v. Minyard Food Stores, Inc.*, 122 S.W.3d 899, 903 (Tex. App.—Dallas 2003, no pet.). As a result, the rule is a method by which the entirety of the evidence may be admitted into evidence rather than a means of excluding the proffered portion. In this case, Tamara was not claiming that the entirety of the board of directors' meeting minutes should have been included in evidence, she was seeking to have the portion of the minutes offered by the Estate stricken from the record. As such, Tamara's reliance on Rule 107 is misplaced.  Further, Tamara has made no showing that the admission of only a portion of the minutes causes confusion, distortion or leaves a false impression.

As to Tamara's hearsay and authentication arguments, the record shows that the document was properly authenticated as a business record by Alex Wilson as a member of the board of directors of Rebel pursuant to Texas Rule of Evidence 902(10). The meeting minutes therefore qualify as an exception to the rule against hearsay and were properly admitted. *See Ortega v. Cach*, LLC, 396 S.W.3d 622, 629 (Tex. App.—Houston [14th] 2013, no pet.). Even if we were to determine the minutes were improperly admitted, it would not change our conclusion regarding Tamara's claim to corporate assets. Regardless of the evidence contained in the corporate minutes, the Estate is entitled to judgment on this issue as a matter of law. *See Trujillo Enterprises, Ltd. v. Davies,* 573 S.W3d. 297, 305 (Tex. App.—El Paso 2019, no pet.) (finding harmless error where evidentiary question did not impact decision that was a question of law); *see also* TEX. R. APP. P. 44.1(a)(1).

It is well settled that a corporation is not property. A corporation exists as a separate legal entity. TEX. BUS. ORG. § 2.101 (describing powers of corporation as an individual). It exists

separate and apart from its shareholders, officers, and directors. *Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App.—El Paso 2010, no pet.) (citing *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.—Dallas 2007, no pet.)). Shareholders have no direct ownership in the assets of the corporation. *Matter of Marriage of Thurmond*, 888 S.W.2d 269, 279-80 (Tex. App.— Amarillo 1994, writ denied). As such, property owned by a corporation is neither the separate nor the community property of the shareholders; it is simply a corporate asset. *Mandell v. Mandell*, 310 S.W.3d 531, 539 (Tex. App.—Fort Worth 2010, pet. denied); *see In re Marriage of Collier*, 419 S.W.3d 390, 403 (Tex. App.—Amarillo 2011, no pet.) (noting corporate assets are not part of community estate).

Without a finding of alter ego, which Tamara has not pled, corporate property is not subject to community property division. *McKnight v. McKnight*, 543 S.W.2d 863, 867 (Tex. 1976) (concluding that the rights of a divorcing spouse can only attach to the interest in the partnership itself and not specific partnership property); *see Traywick v. Houston Freightliner*, No. 14-24-00247-CV, 2025 WL 1232347, at *4 (Tex. App.—Houston [14th Dist.] Apr. 29, 2025, no pet. h.) (finding husband could not have a community property interest in corporation property). This is equally true of real property, corporate earnings, undistributed dividends and profits. *See Mandell*, 310 S.W.3d at 539 (finding business property, accounts, retained earnings and surplus funds not part of community estate); *Legrand–Brock v. Brock*, 246 S.W.3d 318, 322 (Tex. App.—Beaumont 2008, pet. denied) (noting corporation earnings or surplus funds do not constitute dividends and are not subject to community property claim); T*homas v. Thomas*, 738 S.W.2d 342, 344 (Tex. App.—Houston [1st Dist.] 1987, writ denied) (holding retained earnings are corporate asset and not part of community estate). Because Tamara's claim to an interest in income, profits and dividends of Rebel and to the ranch is based on the inaccurate assumption that property owned by

the corporation is subject to classification as community property, her argument fails as a matter of law. Accordingly, the trial court did not err in granting summary judgment on Tamara's claims to Rebel and the ranch.

## C. Unpaid Labor

Tamara further claims that the trial court erred in granting summary judgment denying her claim for reimbursement to the community estate for Wilson's unpaid labor. A community estate is entitled to reimbursement when community time, toil, talent and effort (TTT&E) is used to enhance one spouse's separate estate without adequate compensation. *See* TEX. FAM. CODE § 3.402. Tamara's claim that Wilson's TTT&E benefited Wilson's separate estate essentially consists of the fact that Wilson owned fifty percent of Rebel stock as separate property. As a result, Tamara claims the company's failure to pay Wilson a large enough salary enabled it to purchase the ranch and other unnamed property so that the value of Rebel, and thus Wilson's separate estate, was enhanced to the detriment of the community estate.

This issue has been addressed by the Texas Supreme Court, resulting in what is known as a *Jensen* claim. *See Jensen v. Jensen*, 665 S.W.2d 107 (Tex. 1984). The Jensen court adopted the rule that the community will be reimbursed for the value of time and effort expended by either or both spouses to enhance the separate estate of either, other than that reasonably necessary to manage and preserve the separate estate, less the remuneration received for that time and effort in the form of salary, bonus, dividends and other fringe benefits. *Id*. at 109. In advancing a *Jensen* claim, a claimant must show the value of the uncompensated TTT&E and that this value exceeded what was reasonably necessary to manage and preserve the separate property. *See Gutierrez v. Gutierrez*, 791 S.W.2d 659, 665 (Tex. App.—San Antonio 1990, no pet.).

In this case, the summary judgment evidence shows that Wilson received $1,800 per week from Rebel from 2002 to 2015/2016 and approximately $8,000 per month from 2015/2016 until his death. Tamara does not offer any evidence at all regarding why this salary was not adequate or reasonable compensation for Wilson's TTT&E or what would have been adequate and reasonable, neither does Tamara point to any evidence that would demonstrate the appropriate value of the TTT&E expended by Wilson. *See Lifshutz v. Lifshutz,* 199 S.W.3d 9, 29 (Tex. App.—San Antonio 2006, pet. denied) (holding wife failed to prove *Jensen* claim where she offered no evidence of value of husband's TTT&E). Further, Tamara does not raise any evidence regarding how Wilson's separate property was enhanced by the allegedly uncompensated TTT&E. *See Garza v. Garza*, 217 S.W.3d 538, 547 (Tex. App.—San Antonio 2006, no pet.) (finding wife had no claim for reimbursement where she did not show that increase in separate property value was due to husband's TTT&E).

Tamara assumes the fact that the company was able to purchase a 1,000-acre ranch with cash from undistributed corporate earnings and owns several other pieces of real property is evidence that Wilson's separate estate increased in value at the expense of the community estate. We reiterate that a corporation is neither separate nor community property. Therefore, Tamara's claim regarding an increase in the value of Wilson's separate estate as it pertains to Rebel is limited to his Rebel *stock. See McKnight,* 543 S.W.2d at 868 (noting community property rights can only attach to spouse's interest in partnership and not specific partnership property). While the estate inventory indicates that Wilson's stock was worth $266,775.00 at the time of his death, Tamara has offered no evidence to show how much the stock was valued at the time of Tamara's marriage to Wilson. Accordingly, there is no evidence that the stock increased in value as a direct result of Wilson's TTT&E during the marriage. *See In re Marriage of Douthit*, 573 S.W.3d 927, 932 (Tex.

App.—Amarillo 2019, no pet.) (finding party seeking reimbursement must account for the value of the property at the time of marriage and the enhanced value attributable to community expenditures).

Under these circumstances, we find that Tamara offered no more than a scintilla of evidence to support her claim for reimbursement to the community estate for Wilson's unpaid labor. Accordingly, the trial court did not err in granting summary judgment denying Tamara's reimbursement claim.

**D.      Accounts**

Tamara also argues that the trial court erred in granting summary judgment on her claim that accounts owned by Wilson are assets of the community estate. Tamara alleges that Wilson owned accounts at American Funds, Prosperity Bank, Wells Fargo Bank and Edward Jones at the time of his death and that the American Funds account contained $550,000. We begin by noting that the only account relevant to her claim for declaratory judgment is the alleged Wells Fargo account. The Prosperity Bank account, the Edward Jones account and the American Funds account[1] listed in Tamara's pleadings are in fact included in the estate inventory and classified as community property. As such, Tamara's claim is moot as to those accounts. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001) (finding that where a party lacks a legally cognizable interest in the outcome, a case becomes moot, and there is no right to declaratory relief); *Houston Chronicle Publishing Co. v. Thomas*, 196 S.W.3d 396, 401 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (noting prerequisite for a declaratory judgment action is a real controversy between the parties). As there was no justiciable controversy at issue, the trial court was correct in granting the Estate's

---

[1] Wilson owned shares in an American Funds mutual fund that was held by his Edward Jones investment account. The Edwards Jones account, along with a schedule of its holdings, which included the American Funds shares, was listed in the estate inventory and classified as community property.

motion for summary judgment with respect to the Prosperity Bank, Edward Jones and American Funds accounts. *See In re Stroud Oil Properties, Inc.,* 110 S.W.3d 18, 26 (Tex. App.—Waco 2002, no pet.) (noting that issues of justiciability, including mootness, may be properly disposed by summary judgment). We therefore address Tamara's claim to accounts only as it pertains to an alleged Wells Fargo account.

The only evidence Tamara offered in support of her claim to accounts, was her own affidavit in which she states she has personal knowledge of the accounts. The affidavit also contains Tamara's statement that Wilson told her that he had approximately $550,000 invested with American Funds. The Estate objected to Tamara's affidavit, arguing that Tamara lacked personal knowledge regarding Wilson's accounts and that the affidavit violated Texas Rule of Evidence 601(b) with respect to Wilson's alleged statement. [2] The trial court sustained the Estate's objection and excluded Tamara's affidavit.

Rulings regarding summary judgment evidence are examined under an abuse of discretion standard. *K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000). Under Texas Rule of Evidence 602 and Texas Rule of Civil Procedure 166a(f), affidavits must be based on the personal knowledge of the affiant and set forth facts that would be admissible in evidence. *Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008); *Valenzuela v. Sate & County Mut. Fire Ins. Co.*, 317 S.W.3d 550, 552 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The affiant must show how they acquired such knowledge. *Id.* General assertions of familiarity or conclusory statements do not meet this standard and factual specificity is required. *Valenzuela*, 317 S.W.3d at 553 (noting that

---

[2] There is no need to address the application of Texas Rule of Evidence 601(b) as the contested statement pertains only to monies in the American Fund, which is not at issue.

details such as place, time and exact nature of the alleged facts are necessary to show personal

knowledge). An affiant's belief about the facts is not sufficient. *Kerlin*, 274 S.W.3d at 668.

In the affidavit at issue, Tamara states:

Because my husband wanted to control our family's money, he always had separate accounts which he used to receive his income. He maintained personal checking and saving accounts at Prosperity Bank from 2011 until his death and Wells Fargo from before our marriage until his death.

I understand that my husband received $8,000 per month from his business, Rebel Contractors, from 2015 or 2016 until his death. . .. All of these amounts were deposited in his accounts at Prosperity Bank and Wells Fargo.

I never knew the balances of money at his accounts at Prosperity Bank and Wells Fargo. Sometimes he would show me statements to review and verify expenses. My husband gave me blank checks that were signed by him to pay household expenses from those accounts and sometimes would give me his debit card to pay expenses from those accounts, but otherwise I had no access to those accounts. In addition, my husband put $4,000 per month in my checking account to pay for our household expenses, including groceries, household items, and personal expenditures. Most of the recurring expenses were paid from his Prosperity Bank and Wells Fargo accounts. . . .

The above accounts are all that I know of because my husband handled all of our financial affairs. Other than the 2 Edward Jones accounts described above, I have no idea what the amounts were at the accounts with American Funds, Prosperity Bank, Wells Fargo and Edward Jones. The American Funds, Prosperity Bank, Wells Fargo and potentially other Edward Jones accounts were not payable on death to me, and I have no access to the accounts. So, I do not know what happened to the money.

The fact that Tamara used blank checks and debit cards could perhaps constitute competent

parts of an evidentiary record, but they are not enough on their own to establish Tamara's personal

knowledge regarding the account in question. Without more specificity or supporting evidence,

the affidavit is conclusory. *See Requipco, Inc. v. Am–Tex Tank & Equipment, Inc.,* 738 S.W.2d

299, 302 (Tex. App. —Houston [14th Dist.] 1987, writ ref'd n.r.e.) (stating "an affidavit in

opposition to a motion for summary judgment must set forth the *facts* upon which the affiant

relies."). Notably, Tamara does not attest that she used her husband's *Wells Fargo* card or that he gave her a blank *Wells Fargo* check. Neither does she give any details regarding when she may have seen these statements, checks or cards over the course of her twenty-year marriage. Finally, she offers no supporting or corroborating evidence such as bank statements, check books, debit cards or receipts. Merely viewing documents, without actual control, management or other direct involvement in the account does not establish personal knowledge. *Cf. Valenzuela*, 317 S.W.3d at 553 (holding affiant who merely states his job title without identifying his responsibilities or other basis for personal knowledge of the facts he asserts has not demonstrated personal knowledge); *Villanova v. Federal Deposit Ins. Corp.*, 511 S.W.3d 88, 96 (Tex. App.—El Paso 2014, no pet.) (finding affidavit insufficient where it did not state how job duties in role afforded affiant knowledge or how she was familiar with specific events).

Further, Tamara's statement that Wilson deposited his salary into his accounts at Prosperity Bank and Wells Fargo is speculative given that the remainder of her statement repeatedly states that Wilson handled all the couple's financial affairs and Tamara had no knowledge of the specifics of the accounts. Conclusory statements without explanation of how the affiant acquired knowledge are insufficient. *Brown v. Mesa Distributors, Inc.*, 414 S.W.3d 279, 287 (Tex. App.—Houston [1st] 2013, no pet.). (holding self-serving affidavit sufficient summary judgment evidence "only when it gives detailed accounts of the facts it attests to or when it provides supporting documents which tend to support the statements made.").

After consideration of the affidavit as a whole, we cannot say that Tamara's affidavit established her personal knowledge of a Wells Fargo account containing community property at the time of Wilson's death. *See Rogers v. RREF II CB Acquisitions, LLC*, 533 S.W.3d 419, 428 (Tex. App.—Corpus Christi-Edinburg 2018, no pet.) (stating "[w]e look to the entire affidavit to

determine whether the facts asserted therein are based on personal knowledge."). Instead, the opposite is true. Tamara affirmatively states that her *husband controlled* the family money, she *never knew the balance* of the accounts in question, she had *no access* to the finances, and that she *had no idea* about the details of the accounts. The entirety of Tamara's affidavit tends to disprove her personal knowledge of the family's finances rather than prove it. *See id.* (noting affidavit must be unequivocal regarding facts disclosed) (quoting *Humphreys v. Caldwell*, 888 S.W.2d 469, 470 (Tex. 1994)). As such, the trial court did not abuse its discretion in refusing to consider Tamara's affidavit based on lack of personal knowledge.

To defeat the Estate's motion for summary judgment regarding her claim to accounts, Tamara was required to point to more than a scintilla of evidence that a Wells Fargo account containing community funds existed at the time of Wilson's death. *See* Tex. R. Civ. P. 166a(i); *Merriman*, 407 S.W.3d at 248. Because the trial court did not abuse its discretion in its evidentiary ruling regarding Tamara's affidavit, Tamara is left with no competent summary judgment evidence in which to controvert the basis of the Estate's motion for summary judgment. As such, the trial court did not err in granting summary judgment to the Estate regarding Tamara's claim to accounts.

### E.    Other Claims

Tamara argues that by dismissing all her claims, the trial court erroneously granted more relief than was sought. Particularly, Tamara claims that the Estate never moved for summary judgment as to her breach of fiduciary duty claim, her request for an accounting, her claim to the Wells Fargo account, her claim for reimbursement of assets used to improve the ranch and her claim to Rebel. Generally, granting a summary judgment on a claim not addressed in the summary judgment motion is reversible error. *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011).

As to Tamara's contentions, we begin by noting that Tamara's claim to Rebel stock was nonsuited by the plaintiff herself, so it is not at issue. Next, the Wells Fargo account was properly addressed in the Estate's motion for partial summary judgment on Tamara's claim to accounts. Further, as previously discussed, given that Rebel is a separate legal entity and the ranch is a corporate asset, funds loaned to it or used for its benefit are not subject to a community property claim for reimbursement. This argument was raised and sufficiently addressed in the Estate's motions for partial summary judgment as to Tamara's reimbursement claim and her claims to Rebel and the ranch.

While the Estate did not specifically move for summary judgment as to Tamara's breach of fiduciary duty claim, we find that the claim is necessarily derivative of her claim to accounts. Tamara argues that by designating his accounts to be paid on death to his children, Wilson deprived the community of funds that rightly belonged to it and, thus, breached his fiduciary duty to the community estate. An indispensable element of Tamara's claim is the existence of the alleged accounts, which was addressed in the Estate's motion for summary judgment on Tamara's claim to accounts. The supreme court has recognized an exception to the requirement that all claims must be addressed in a motion for summary judgment in cases where an ultimate fact or element common to all causes of action alleged has been disproved, or the unaddressed causes of action are derivative of the addressed cause of action. *See id.* (collecting cases). Because an essential element of Tamara's breach of fiduciary duty claim necessarily fails as a result of the trial court's disposition of the accounts claim, the trial court did not err in entering judgment as to the breach of fiduciary duty claim. The same exception applies to Tamara's pleas for partition and an accounting as both claims seek relief based on an assumption of community property that was negated by the trial court's ruling on the entirety of the Estate's motions for partial summary

judgment. *See Chale Garza Investments, Inc. v. Madaria*, 931 S.W.2d 597, 601 (Tex. App.—San Antonio 1996, writ denied) (noting in case in which claim was not addressed in motion for summary judgment, reversal of summary judgment on a claim that it is precluded as a matter of law would be meaningless). Accordingly, the trial court did not err in entering final judgment on all of Tamara's claims.

## ATTORNEY'S FEES

Finally, Tamara challenges the trial court's award of $58,140 in attorney's fees, claiming the Estate did not state grounds for a request for attorney's fees, did not prove that the requested fees were reasonable and necessary, and failed to properly segregate its requested fees. Attorney's fees and costs are authorized in a declaratory judgment action if such an award is equitable and just and if the amount is reasonable and necessary. TEX. CIV. PRAC. & REM. CODE ANN. § 37.009. Contrary to Tamara's assertion, the Estate clearly requested attorney's fees pursuant to Texas Civil Practices and Remedies Code § 37.009 in both its original answer and its first amended answer. Further, the parties agreed to try the issue of attorney's fees to the court by affidavit. Therefore, the issue of attorney's fees was properly before the court.

When the reasonableness of an award of attorney's fees is challenged, we must determine whether the evidence is sufficient to support a finding of reasonableness. *Sundance Minerals., L.P. v. Moore*, 354 S.W.3d 507, 513 (Tex. App.—Fort Worth 2011, pet. denied). "Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498 (Tex. 2019). To support the requested amount of attorney's fees, parties frequently rely on the testimony

or affidavit of the attorney of record. *See id*. at 490. In this case, the Estate filed a thirteen-page affidavit from its attorney accompanied by a ninety-one-page schedule of billing records. The affidavit sets out both the attorney's and his co-counsel's qualifications and experience. The attorney describes the methods used for evaluating the reasonableness of the rates incurred, clarifies customary fees for similar work, and methodically explains his firm's billing practices as they relate to the billing records submitted. The billing records clearly identify the work that was done, the attorney who performed the work, the amount of time it took, the date it was completed, and the rate charged. The thoroughness of the attorney's affidavit coupled with the supporting billing statements constitutes sufficient evidence to support a finding that the Estate's attorney's fees were reasonable and necessary. *See id*. at 505 (requiring specific detail about work done to establish reasonableness and necessity).

As to segregation of fees, the Estate's attorney explains that he segregated fees for ordinary estate administration matters and fees incurred for "non-Tamara" estate matters from those matters regarding Tamara's claim to the estate to the best of his ability. He notes, though, the difficulty of segregating Tamara's former claims against the estate from the present action, stating "Tamara's claims to estate property are inextricably intertwined with the Estate's multiple enforcement actions against Tamara to retrieve, protect, and safeguard estate property."

A party seeking attorney's fees has a duty to segregate attorney's fees in a case containing multiple claims, only some of which entitle the recovery of attorney's fees. *Green International, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). However, there is an exception to the duty to segregate when attorney's fees are awarded in connection with claims so interrelated that their prosecution or defense entails proof or denial of essentially the same facts. *Stewart Title Guaranty. Co. v. Sterling,* 822 S.W.2d 1, 11 (Tex.1991). The record in this case, along with the affidavit and

billing statements offered by the Estate's attorney, indicate that the proof required during Tamara's previous claims to estate property is substantially the same as that needed to defend Tamara's current claims. For example, the defense of claims raised in this case regarding Rebel stock, corporate assets, the ranch, and Wilson's accounts were all dependent on the same set of facts and required the same evidence as the defense of Tamara's claims to those same assets in the previous probate proceedings. Under these circumstances, Tamara's claims for declaratory judgment are inextricably intertwined with Tamara's previous claims to estate property so that the exception to the general duty to segregate applies. *See Estate of Vrana*, 335 S.W.3d 322, 328 (Tex. App.—San Antonio 2010, no pet.) (finding no duty to segregate where different actions in probate proceeding were all dependent on the same set of circumstances). Considering the evidence submitted, we find the issue of attorney's fees was properly submitted, that there is sufficient evidence to support the award of attorney's fees, and that the trial court did not err in doing so.

The judgment of the trial court is AFFIRMED.

H. Todd McCray, Justice